[Civ. No. 19270. Second Dist., Div. Three. Dec. 15, 1953.]

CONRAD FRANK, Appellant, v. JACK DOMINICK, Respondent.

McCarroll & McCarroll and Mary H. McCarroll for Appellant.

Arthur V. Kaufman, Fleming, Robbins & Tinsman, C. S. Tinsman and Clay Robbins for Respondent.

VALLÉE, J.—Appeal by plaintiff from an adverse judgment in an action for damages for breach of an agreement of partnership, and for rescission of an agreement dissolving the partnership on the grounds of fraud and mistake. The court found there was no breach of the agreement, and no fraud or mistake.

The evidence and the reasonable inferences therefrom will be stated in the light most favorable to defendant-respondent, disregarding conflicting evidence and inferences. (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557].)

On April 1, 1946, plaintiff and defendant entered into a written agreement of partnership to conduct a battery separator business for 15 years. Defendant had been conducting the business for many years and owned the land and building in which it was conducted. Defendant agreed to rent the land and building to the partnership for the term at $500 a month. The business was operated successfully until October 5, 1949. On that date, a large part of the stock and machinery was destroyed by fire. After the fire, the parties discussed dissolution of the partnership, that one or the other would buy or sell; offers and counteroffers were made. Settlement with an insurance company was had; and, on December 1, 1949, the parties divided the proceeds, each receiving $29,000. They also divided the cash on hand with the exception of sufficient to take care of outstanding checks. On December 5, 1949, the parties met in an attorney's office and discussed dissolution with him. After much conversation back and forth, the parties agreed that defendant would buy plaintiff's interest in the partnership for $16,000. The attorney prepared a written agreement of dissolution which was read and signed by both parties.[1] Defendant on that day gave plaintiff

[1]The dissolution agreement read: ''This Agreement of Dissolution of Partnership made and entered into this 5th day of December, 1949, by and between JACK DOMINICK, hereinafter designated as the 'Continuing Partner', and CONRAD FRANK, hereinafter designated as the 'Retiring Partner'.

''WHEREAS, the parties hereto, on the first day of April, 1946, entered into a written agreement of Articles of Copartnership for the operation of a business under the name of SIGNAL BATTERY SEPARATOR CO., in the City of Los Angeles, County of Los Angeles, State of California, and

a check for $16,000. On January 10, 1950, plaintiff gave defendant a written notice of rescission of the dissolution agreement on the claimed grounds of fraud, mistake, want of consideration, and failure of consideration.

██ Plaintiff asserts the findings are not supported by the evidence. He claims that after the fire, and prior to the dissolution agreement, defendant falsely represented to him that he (defendant) did not intend to go back into the separator business, and that it was only because of this representation that he entered into the agreement. A short time after December 5, 1949, defendant went back into the separator business at a new location. There was evidence he intended to do so at the time the dissolution agreement was entered into. Plaintiff himself testified that on December 5, 1949, in

---

"WHEREAS, said parties are desirous of terminating said agreement and dissolving said partnership as from the 2nd day of January, 1950, and

"WHEREAS, it has been agreed that as from that day, the business shall belong to, and be carried on by JACK DOMINICK, the Continuing Partner, solely, and that the share and interest of CONRAD FRANK, the Retiring Partner, in the assets and good will of the partnership shall be assigned and made over to the Continuing Partner, and

"WHEREAS, an account and valuation has been taken and made by the partners of the business, and the assets and good will thereof, and the value of the share and interest of the Retiring Partner therein, after providing for the payment and satisfaction of the debts and liabilities thereof on the 2nd day of January, 1950, has been ascertained to be $16,000.00.

"WITNESSETH:

"1. That in pursuance of the agreement in this behalf, the parties do hereby declare that the partnership between them shall be considered as determined and stand dissolved as from the 2nd day of January, 1950; and that in pursuance of the agreement, and in consideration of the premises and of $16,000.00 to be paid by the Continuing Partner to the Retiring Partner on January 2, 1950; the Retiring Partner does hereby assign and transfer unto the Continuing Partner, his executors and assigns, all of his share and interest in and to said business, including all machinery, equipment, accounts receivable, assets, business and good will of the partnership.

"2. The Retiring Partner hereby agrees with the Continuing Partner that he, the Retiring Partner, has not at any time, except as appears by the books of the partnership, contracted any debt or obligation which can or may affect the said Continuing Partner or the assets or effects of the partnership.

"3. Each of the parties hereby releases and forever discharges the other of them, his heirs, executors and assigns, from all actions, claims and demands whatsoever which such respective releasing party or his heirs, executors or assigns now has, or hereafter might have, against the other of them, his heirs, executors or assigns, on account of the partnership or anything relating thereto, but so nevertheless that this present release shall not prejudice or affect any of the provisions herein contained or the rights of the respective parties, their heirs, executors or assigns hereunder."

the discussion as to what the dissolution agreement should contain, he said he wanted it to provide that defendant would not go into the same business again for a year so he (plaintiff) "would have a year of freedom from competition," and that defendant said, "[N]o, he wouldn't do that, . . . he wouldn't agree to that." The agreement was then prepared by the attorney and later in the day, read, and signed by both parties. This evidence is sufficient to support the finding that there was no fraud. ■ While there was much evidence from which a different conclusion could have been drawn, the function of this court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding.

At the time of dissolution, the term of the partnership had 11½ years to run. Defendant paid plaintiff $16,000 for his half interest. Plaintiff claims the consideration for the agreement was grossly inadequate and that it should have been canceled on that ground. The building in which the business was conducted was completely destroyed by the fire; the machinery and equipment were substantially destroyed and rendered unuseable without the expenditure of a large sum of money. Plaintiff was thoroughly familiar with the business of the partnership and with the assets remaining after the fire. He employed an adjuster to act for the parties in adjusting the losses sustained with an insurance company; assisted the adjuster in making an inventory of the stock on hand after the fire; and, with the adjuster, determined the salvage value of the stock on hand to be $4,000. The salvage value of the machinery was about $30,339.06. Plaintiff says that by the agreement, in addition to the value of the stock and machinery, he also gave up a half interest in $5,000 worth of lumber, 2¼ million separators, a $1,500 truck, and accounts receivable of $4,200.

■ The claimed inadequacy of consideration is apparently argued as a badge of fraud. Since the court found there was no fraud, and since the finding is supported by the evidence, the fact that plaintiff may have given up more than he received is of no consequence. The court found there had been a complete accounting between the partners, and that plaintiff executed the dissolution agreement with full knowledge of its contents and of his legal rights under it, and of his own free will; that at the time plaintiff was fully advised and informed, and had knowledge, of the assets and liabilities

of the partnership; and that there was no concealment of any kind by defendant. These findings are supported by substantial evidence.

The dissolution agreement has a provision by which each party released all claims he might have against the other. Plaintiff claims that at the time the agreement was entered into there were various errors in bookkeeping in defendant's favor of which he had no knowledge, and that he did not discover the errors until he was preparing for trial. He says that a general release does not extend to claims which the creditor does not know or suspect exist in his favor at the time of executing the release, and that the agreement should have been canceled on that ground. The books were kept by one Ward. Ward testified that proper charges and credits were made in the books as to all transactions. An illustration of the items of which plaintiff complains is the crediting of $22,491.15 to defendant's investment account in 1949. Ward testified the $22,491.15 was an overage in the deposits over and above what was shown on the books; that before he credited it to defendant's investment account he ''got both'' plaintiff's and defendant's consent to it; that between the 10th and the latter part of November, 1949, when plaintiff and defendant were present, ''they both agreed on my suggestion that it belonged to Mr. Dominick because there was just approximately that difference in their capital account.'' Defendant testified he ''left the money in the bank to carry on the business.'' Defendant also testified that after April 1, 1946, plaintiff received half of everything. The evidence concerning the items of which plaintiff complains was highly conflicting, and the court's conclusions with respect to them may not be disturbed.

It is argued that there was a mutual mistake of fact and that the dissolution agreement should have been canceled on that ground. The asserted mutual mistake of fact is that the parties believed the dissolution agreement was only an agreement for the purchase by defendant of plaintiff's interest in the fire salvage and in the accounts receivable. A few days after the fire defendant selected another location for the business, but plaintiff would not agree to it. Plaintiff testified he made a complete survey of the machinery and equipment that was in the premises after the fire; that he had full knowledge of it when he went to the attorney's office; and that he knew what it would cost to place each item of

machinery back in good operating condition. Plaintiff further testified that in the discussion prior to going to the attorney's office defendant told him he (defendant) was through; that he asked defendant what they were "going to do with the business," and defendant said "Well, we just have to figure a price and then either you buy or I buy." Again, plaintiff testified that on December 1, 1949, it "was agreed to see an attorney that following Monday to turn the business over to me." That day the cash, amounting to some $60,000, was divided. Plaintiff knew that the sales tax permit issued to the partnership by the board of equalization had to be canceled on termination of the partnership, and he knew prior to going to the attorney's office that it had been canceled. The conclusion of the discussion in the attorney's office was that defendant would buy plaintiff's interest in the partnership for $16,000. The attorney then dictated a rough draft of the agreement in the presence of plaintiff and defendant. The dictation was read in evidence. The parties left the attorney's office and returned later the same day. In the meantime the attorney had prepared the agreement. When they returned the attorney handed each party a copy. Each party then read the agreement. As he read it plaintiff said to the attorney, "Here is a clause that wasn't in the draft of the agreement that you prepared or dictated when the girl was here," referring to the clause by which each partner agreed there were no debts other than shown on the books. The attorney explained its meaning to plaintiff. Both parties then signed the agreement and a notice of dissolution, the purpose of which the attorney explained to them. It was clear from the dictation of the rough draft and from the agreement that plaintiff knew at the time he signed that he was transferring all of his interest in the partnership, including all of its assets, business, and goodwill. The evidence supports the finding that there was no mistake of fact.

Plaintiff contends the court erred in not admitting a number of documents in evidence. Some of these were marked for identification only and were not offered in evidence at the trial. At the conclusion of the trial, an order was made that the parties submit authorities within 10 days and upon the expiration of that time the cause would stand submitted. Plaintiff says his counsel sent a letter with her authorities asking that these documents be received in evidence and that defendant's counsel in a letter with his authorities objected

to their admission. It does not appear that the court took cognizance of the letters. No ruling appears in the record. Under these circumstances, plaintiff has no ground for complaint. A batch of checks, which plaintiff says should have been admitted in evidence, were read into the record. Plaintiff offered 12 bank statements of the partnership for 1949 in evidence. Defendant objected. The court stated: "I am going to order that they be marked . . . for identification." Plaintiff says the court admitted copies of the partnership's bank statements from May 20, 1946, to April 1, 1949, in evidence, and that if the rest of the statements had been received, "it would be possible to check them against the worksheets of the bookkeeper and the amount of sales shown thereon and was highly material to show whether or not an accounting would reveal that respondent had defrauded appellant."

█ Documents are not admissible in evidence merely to afford a party an opportunity to check them against evidence in the record. Such opportunity was afforded by the marking of the statements for identification. There is no affirmative showing of error.

It is next contended that two findings and parts of others are not supported by the evidence. No purpose would be served in examining this contention in detail. The findings complained of are largely evidentiary in character and immaterial. The findings of fact, with respect to the claims of fraud, mutual mistake, and consideration, are sufficient to support the judgment.

█ At the close of the trial, plaintiff requested leave to file an amendment to the complaint to conform to proof. The proposed amendment added a cause of action alleging that defendant "misapplied and appropriated to his own use large sums of money from the partnership property in excess of his proportion thereof." It is alleged that plaintiff did not know the amount, but that it was about $35,417.33; that defendant fraudulently concealed the misappropriations; that no accounting had been had; that plaintiff did not discover the facts until the trial; that he would not have entered into the dissolution agreement had he known of the misappropriations. The prayer was for dissolution of the partnership and an accounting. The request was denied. Plaintiff assigns error. The court found there had been no misappropriations and that an accounting had been had. █ Further, whether the amendment should have been allowed was a matter within

the sound discretion of the trial judge which will not be disturbed on review in the absence of a showing of abuse. (21 Cal.Jur. 181, § 126.) No such showing is made.

Plaintiff contends the court abused its discretion in refusing to extend the time within which to file an amendment to his motion for a new trial and within which to file affidavits in support of the motion. ·Plaintiff duly filed a notice of intention to move for a new trial. Affidavits to be used upon such motion must be filed within 10 days after serving the notice; the time may, for good cause shown by affidavits or written stipulation, be extended for an additional period of not exceeding 20 days. (Code Civ. Proc., § 659(a).) Plaintiff did not file any affidavits within the 10 days. On the last day to which the period could be extended, plaintiff presented to the trial judge an affidavit of one Lem Mon to be used upon the motion and an affidavit of his counsel in support of a request for an extension of time in which to file an amendment to the notice of intention to move for a new trial. The affidavit of Lem Mon stated facts purporting to show concealment of the books of the partnership by defendant. The judge declined to sign an order that the affidavits be filed.· On the hearing of the motion, counsel for plaintiff asked leave to file the affidavits. The court said, "File them now." Plaintiff's counsel did not file them, but discussed the matter of the time for filing them with the court. Counsel for defendant then offered to stipulate that the affidavit of Lem Mon be filed and considered provided counsel for plaintiff stipulated that defendant denied the facts stated. The court said if that was done the affidavit of Lem Mon could be filed. Counsel for plaintiff refused to accept the stipulation. The motion to file the affidavits was then denied. The court did not abuse its discretion. Having had an opportunity to file the affidavits after the time for doing so had expired and to have them considered, plaintiff may not now complain.

No other points require comment. The questions in this case were factual. There is evidence that would have supported contrary findings. We may not reject the findings of the trial court and substitute findings of our own, even though we might arrive at a different conclusion. The trial court having found the evidence to weigh more heavily for defendant,· the matter is at an end.

Plaintiff also appeals from an order denying a jury trial and from the order denying his request for an extension

of time within which to file additional affidavits in support of the motion for a new trial. Since these orders are nonappealable, the appeals therefrom will be dismissed.

The appeals from the orders are dismissed; the judgment is affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.