[Civ. No. 24149. Second Dist., Div. Two. Mar. 7, 1960.]

JOHN J. WINBERRY, Appellant, v. ADRIAN B. LOPEZ, Defendant; ANNABELLE LOPEZ, Intervener and Respondent.

Morton R. Goodman for Appellant.

David Ravin for Intervener and Respondent.

FOX, P. J.—This appeal is from a judgment in favor of intervener, Annabelle Lopez, quieting her title to certain real property against the adverse claims of defendants in intervention, Winberry and Adrian B. Lopez. Winberry alone has appealed from the judgment.

Winberry commenced an action against Adrian B. Lopez in June, 1954, to recover on a promissory note executed on May 11, 1953, in favor of Winberry, who secured a writ of attachment and levied the same, on June 30, 1954, on the real property here in question. Annabelle and Adrian entered into a contract to purchase this property, located in Encino, in November, 1951, prior to their marriage. Adrian furnished the entire down payment of $17,000. They were married in January, 1952. Upon discovering that the deed, recorded after their marriage, was in Adrian's name, as a single man, Annabelle remonstrated with him. As a result, Adrian executed a deed conveying the property to himself and Annabelle as joint tenants in July, 1952. After the marriage Adrian continued to live in New York and carry on his business

there. Annabelle acted as his west coast representative and, although she traveled back and forth between California and New York, for the most part she lived in the house on the premises with her invalid mother. Annabelle, after having the effect of a joint tenancy deed explained to her, contacted Adrian expressing her dissatisfaction, and that this was not what she had expected, and pointing out to him that if something should happen to her the house would not be hers and her mother would not have a home. Annabelle testified that before they were married Adrian had told her that this property was to be her home and that title would be in her name. She kept after Adrian, who said he would take care of the matter but would first have to "talk to John," meaning plaintiff Winberry. Later, Adrian came to California and, in discussion with her he said "it was finally going to be my house and that he finally understood the difference between joint tenancy, and what it would mean, that it wasn't really my house. . . ." On July 29, 1953, Adrian executed another deed conveying the property to Annabelle as her sole and separate property. Annabelle and Adrian were later divorced. Annabelle testified at the trial of the instant case that she had paid the monthly installments and taxes on the property out of her separate funds since early in 1954.

Annabelle filed her complaint in intervention on July 16, 1954. A default judgment was entered July 19, 1954, against Adrian and in favor of Winberry, on the promissory note. Both Winberry and Adrian filed answers to the complaint in intervention; Adrian, however, appeared at the trial, solely as a witness for Winberry. After a trial on the merits, judgment was entered quieting title to the property in Annabelle and dissolving the attachment levied by Winberry. He appeals from that judgment.

The complaint in intervention alleges that defendant Adrian had no right, title or interest in the Encino property on June 30, 1954, which was subject to the attachment levied by Winberry. It further alleges that Annabelle is the sole record owner of the property and that she holds it as her separate property.

Winberry's answer to the complaint in intervention denied that Adrian has no right, title or interest in and to the real property and alleged that: ". . . said defendant, Adrian B. Lopez, is the owner of said property, having purchased the same; that the said property originally stood in the names of defendant, Adrian B. Lopez, and plaintiff in intervention,

Annabelle Lopez; that on or about the 29th day of July, 1953, said Adrian B. Lopez, without consideration, executed a deed to said property to said Annabelle Lopez; . . . that theretofore said property had been purchased with funds supplied by defendant, Adrian B. Lopez, and title stood in the names of said defendant, Adrian B. Lopez and Annabelle Lopez, as joint tenants; that said transfer was made by defendant, Adrian B. Lopez, to Annabelle Lopez, upon the suggestion of said Annabelle Lopez that said title be put in the name of Annabelle Lopez for the protection of said defendant, Adrian B. Lopez, for the reason stated by said Annabelle Lopez that she 'did not want creditors to take the house.' '' Winberry's answer also denied that the house and lot was the sole and separate property of Annabelle and alleged that Adrian is the owner of an interest therein subject to the levy of the attachment.

Three assignments of error are made by Winberry on his appeal: (1) That the trial court tried and decided the case on an erroneous theory; (2) that the trial court erred in refusing to give Winberry the benefit of the presumption created by Civil Code, section 3439.04; and (3) that the trial court erred in refusing to allow Winberry to amend his answer to conform to the uncontradicted proof that Adrian was insolvent at the time of the transfer. Winberry does not challenge the sufficiency of the evidence to support the findings.

In support of his contention that the trial court tried and decided the case upon an erroneous theory, Winberry points out that during the course of the trial the judge indicated that to establish actual fraud it would be necessary for Winberry to show a ''conspiracy'' or ''concert of action'' between Annabelle and Adrian whereby they mutually intended to defraud Adrian's creditors by the conveyance to Annabelle. Had this theory found its way into the ultimate decision there would be merit in Winberry's contention. However, it does not appear that the case was decided on such erroneous theory. The record shows that the trial judge was laboring under some uncertainties as to the correct principles that should govern his decision. This is indicated by the fact that upon the conclusion of the trial the court ordered counsel to submit briefs upon the questions involved, including, *inter alia,* whether the state of mind of Annabelle was an essential factor in determining the question of fraud in Adrian's conveyance to her. This clearly shows that the court did not have any settled intention of applying the conspiracy or

concert of action theory in reaching his decision, nor do the findings disclose the application of such theory. Therefore, Winberry has failed to establish that any erroneous theory infected the decision. ▮▮ Consequently, the rule established long ago in *Scholle* v. *Finnell,* 173 Cal. 372 [159 P. 1179], is apposite. At page 376 the court stated: "No antecedent expression of the judge, whether casual or cast in the form of an opinion, can in any way restrict his absolute power to declare his final conclusion in the only manner authorized by law, to wit, by filing the 'decision' (findings of fact and conclusions of law. . . ."

The second ground for reversal urged by Winberry concerns the refusal of the trial court to give him the benefit of the presumption contained in section 3439.04 of the Civil Code. This section reads: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." In this connection, Winberry asserts that the uncontradicted testimony of Adrian Lopez clearly shows that he was insolvent at the time he transferred the property to his then wife, Annabelle. Winberry further argues that he was not required to specifically plead the insolvency of Adrian at the time of the transfer in order to have the benefit of section 3439.04, since, in his capacity as defendant in intervention, he need only deny the right, title and interest of Annabelle in order to have the advantage of any provable facts supporting such denial. However, this argument will not stand the test of reason or authority.

The complaint in intervention was in the nature of a quiet title action. ▮ It is well settled that "In an action to quiet title, the plaintiff must recover upon the strength of his own title and not upon the weakness of the defendant's claim." (*Tanner* v. *Title Ins. & Trust Co.,* 20 Cal.2d 814, 825 [129 P.2d 383].) It has also been held that in a suit to quiet title, a defendant relying upon a tax title need not plead it specially. (*Smart* v. *Peek,* 213 Cal. 452 [2 P.2d 380].) In the Smart case, the court held at page 454: "An answer denying the plaintiff's title and right to possession is always sufficient. (Citing cases.) Under such an answer the defendant may prove whatsoever right he may have, including a tax title."
▮ However, these general rules are qualified by the settled doctrine that fraud, whether as an element of a cause of action

or as an affirmative defense, must be pleaded. (*Davies* v. *Symmes*, 49 Cal.App.2d 433, 446 [122 P.2d 102].) This rule applies with particular emphasis to quiet title actions. (*Moss Estate Co.* v. *Adler*, 41 Cal.2d 581, 584 [261 P.2d 732].) In the Davies case, the same argument made by Winberry was made by the appellant and defendant in intervention. In regard to this contention, the court held, at page 445: "It is now contended that defendants should have been allowed to prove their defenses under a denial of plaintiff's title and an allegation of title in themselves. They rely upon the rules stated in *Sparrow* v. *Rhodes* (1888), 76 Cal. 208 [18 P. 245, 9 Am.St.Rep. 197]; *Bird* v. *Murphy* (1925), 72 Cal.App. 39 [236 P. 154], and like cases, that where it is sought to recover possession of property or to quiet title thereto, the defendant is not bound to anticipate the source of plaintiff's title and may prove, without pleading the fact, that it depends upon a void conveyance. This is an exception to the rule that fraud, undue influence, want of consideration, and like defenses must be pleaded. It rests upon the supposition that the defendant does not know, and it excuses him from ascertaining, the source of plaintiff's title before he answers. The effect of it is to permit proof of the void character of a conveyance without the framing of issues by comprehensive pleadings. Such a departure from established procedure is tolerated only through necessity and in exceptional cases. But the rule relied upon could have no application to the facts of the case before us. Defendants had purchased the land from plaintiffs and had reconveyed it to them. They knew that plaintiffs' title depended upon the latter deed, which they sought to rescind. They had the affirmative duty of proving the invalidity of their deed; otherwise they could not have defeated plaintiffs' title or established their own." ■ In the present case, Winberry well knew the source of Annabelle's claim to title. He was therefore required to plead fraud in her acquisition of that title in order to rely upon it as a defense. But the only fraud pleaded was intentional fraud under section 3439.07 of the Civil Code, and not constructive fraud covered by section 3439.04. It is clear the case was tried under the theory of intentional fraud and that the evidence relative to Adrian's insolvency at the time of the transfer was admitted for the sole purpose of showing circumstances which might lead to an inference of fraudulent intent. Under these circumstances, the case of *Haskins* v. *Certified Escrow & Mtg. Co.*, 96 Cal.App.2d 688 [216 P.2d 90], is apposite. The court

said, at page 690: "In his briefs appellant takes the position that it was shown by undisputed evidence that the deed was given without consideration and that the corporation was insolvent, and he contends that the conveyance was fraudulent under section 3439.04 of the Civil Code, without regard to the actual intent of the grantor. Under this section, the conveyance by an insolvent without a fair consideration is fraudulent as to creditors, even though there be no actual intent to defraud. Under section 3439.07, a conveyance made with actual intent to defraud creditors is fraudulent. Appellant charged actual fraud and not constructive fraud. There was no insufficiency of the evidence to support the finding that no actual fraud existed. Having pleaded and tried his case upon the theory of actual fraud, appellant cannot be heard to say now that he made out a case of constructive fraud. . . . On appeal he must be held to the theory upon which he relied in the trial court." It follows that there was no error in the trial court's refusal to apply section 3439.04 in arriving at its decision.

We come now to Winberry's third assignment of error: that the trial court erred in its refusal to allow him to amend his answer to conform to the proof of Adrian's insolvency by alleging such insolvency specifically. ▮ It is axiomatic that the trial court has broad discretionary powers with reference to the allowance or disallowance of amendments to pleadings during the course of the trial. (*Frank* v. *Dominick*, 122 Cal.App.2d 45, 53 [264 P.2d 161]; *Wood* v. *Shipp*, 105 Cal.App.2d 335, 337 [233 P.2d 193].) ▮ Furthermore, there is no abuse of discretion where an amendment is disallowed for the reason that, if allowed, it would work an undue hardship on the opposing party. (*Kroplin* v. *Huston*, 79 Cal. App.2d 332, 340 [179 P.2d 575]; *Weinberg* v. *Dayton Storage Co.*, 50 Cal.App.2d 750 [124 P.2d 155].) In the Kroplin case the court stated: "The rule is well established that the trial court has a sound discretion to allow amendments of pleadings during the trial, in furtherance of justice and to dispose of the case on its merits, *when the adverse party is not prejudiced thereby*." (Emphasis added.) In this respect, the reasons given by the trial judge for denying the amendment are persuasive and reflect a proper application of the discretion vested in him. The trial court stated: "But if I were to now take the position that after you got Mr. Lopez' testimony in [relative to his insolvency at the time of the transfer], which the Court allowed for another purpose [as an inference of a

fraudulent intent], to harness it or hitch it to a revised pleading by amendment, that would place you in a position of having a presumption, the benefit of a presumption. It would be of critical effect to your adversary. . . . At this last moment after the evidence is in, the position of Mr. Winberry is now being groomed to set sail on another craft, and that is what it amounts to. I think there is no excuse.''

There is yet another reason for holding that the trial judge did not abuse his discretion in disallowing the amendment. The evidence of insolvency was properly admissible under the original answer since the insolvency of a transferor has a tendency to show that he had an actual fraudulent intent. It is clear from the record that the evidence of Adrian's insolvency was admitted for this sole purpose. The ruling in *Makovsky* v. *Makovsky,* 158 Cal.App. 2d 738, 744 [323 P.2d 562], is particularly pertinent and persuasive. There the court said: ''Under such circumstances, that is, *where proof adduced is in conformity with the pleadings,* there is no room for a court to exercise its discretion and allow amendment of the pleading. . . .'' (Emphasis added.) The court then held that no element of estoppel works against a party for failure to object to evidence which is made the basis of an amendment to conform to proof, when that evidence was proper under the original pleading. Thus, in the present matter, the evidence of insolvency which was admitted to prove actual fraud, may not be converted into proof of constructive fraud by an amendment of the answer when constructive fraud was not pleaded and where the case was tried only on the issue of actual fraud. To have allowed such amendment would have greatly prejudiced the rights of the plaintiff in intervention, Annabelle Lopez. There was no error in the court's ruling.

In view of our conclusion, it is unnecessary to consider other questions discussed in the briefs.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied April 1, 1960, and appellant's petition for a hearing by the Supreme Court was denied May 4, 1960.