[No. C040272. Third Dist. Mar. 21, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSHUA JAMES THUSS, Defendant and Appellant.

**COUNSEL**

Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Rachelle A. Newcomb, and David Andrew Eldridge, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

SIMS, J.—Following the denial of his motion to traverse a search warrant and suppress evidence, defendant Joshua James Thuss pled no contest to possession of marijuana for sale in violation of Health and Safety Code section 11359. On appeal, defendant contends: (1) he was denied due process when the trial court refused to admit certain evidence relevant to the affiant's credibility at the traversal hearing (*Franks v. Delaware* (1978) 438 U.S. 154 [98 S.Ct. 2674, 57 L.Ed.2d 667] (*Franks*)) and (2) there was insufficient probable cause to support the search warrant for his residence.

We shall conclude that defendant may not complain that certain writings were not admitted in evidence where he did not move the writings into evidence. We shall further conclude that the presence of fresh marijuana clippings in defendant's trash outside his house furnished probable cause to obtain a warrant to search the house. We shall therefore affirm the judgment.

### BACKGROUND

On the morning of November 4, 1999, Placer County Sheriffs served a search warrant at defendant's residence located at 4879 Willowbrook Drive in Sacramento. There, officers found 47 marijuana plants, in various stages of maturation, growing in hydroponic grow trays in one of the bedrooms. The officers also discovered a triple beam scale and packaging materials and marijuana clippings in a bag in the garage. After being "Mirandized" (*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974]), defendant admitted to growing marijuana for purposes of sale.[1]

In superior court, defendant moved to traverse the search warrant and suppress the fruits of the search.[2] At the traversal hearing, defendant claimed Placer County Deputy Sheriff Tracy Grant, the affiant of the search warrant, recklessly or intentionally included false and misleading information in his

---

[1] Because this case comes to us after a plea, the facts of the offense are taken from the probation report.

[2] Although the motion was made and determined in superior court, the motion was heard by Superior Court Judge Gary Ransom, who had issued the warrant while sitting as a magistrate. (See Pen. Code, § 1538.5, subd. (b).) Neither party contests the procedure.

affidavit and that, if this information were excised, insufficient probable cause remained for issuance of a warrant.

The affidavit for the search warrant contained general allegations attesting to Grant's qualifications and experience concerning narcotics. It also contained the following specific statements which were challenged by defendant:

"On 10-18-99 your affiant drove to 4879 Willowbrook Dr. Sacramento, California and observed one vehicle in the driveway to the residence. The vehicle license plate number was 3CQA569. Your affiant obtained DMV records for 3CQA569, which returns to Joshua James Thuss at 4879 Willowbrook Dr. Sacramento. [¶] . . . [¶]

"Your affiant contacted Sacramento County Waste Management and determined trash is collected Tuesday at 4879 Willowbrook Dr. Sacramento. On 10-26-99 your affiant and Detective [Goodpasture] conducted a search of the trash can which was placed at the curb side for collection directly in front of 4879 Willowbrook Dr. Sacramento, California. Your affiant found thirty two discarded letters addressed to Joshua Thuss at 4879 Willowbrook Dr. Sacramento, California. Your affiant also found marijuana stems and leaves recently cut from a mature marijuana plant. The marijuana was fresh green and still moist and had been recently cut from a mature plant. . . . [¶] . . . [¶] Your affiant subpoenaed subscriber and power usage records for 4879 Willowbrook Dr. Sacramento, California from Sacramento Municipal Utility District SMUD. The subscriber for power is Joshua J. Thuss. The records revealed high power use for the past nine months for a total of 11,976 KW with a [sic] average of 1330 KW used a month. Your affiant compared power use at 4879 Willowbrook Dr. Sacramento, California with other like residences located in the same neighborhood. The power use at 4879 Willowbrook Dr. Sacramento is 143 to 252 percent higher than the power use at the other like residences when compared over the same nine month period. The residences used as comparison were:

"4878 Willowbrook Dr. Sacramento, California, which used 8,342 KW for the same nine month period (926 KW monthly average).

"4884 Willowbrook Dr. Sacramento, California, which used 6,604 KW for the same nine month period (733 KW monthly average).

"4890 Willowbrook Dr. Sacramento, California, which used 4,737 KW for the same nine month period (526 KW monthly average)."

The affidavit then explained that such high-power consumption is consistent with the use of the equipment needed to grow marijuana indoors, such as grow bulbs, ballasts, fans, and water pumps.

At the hearing, defendant attempted to show that Grant had falsely averred that he found marijuana cuttings in defendant's trash, falsely averred that he had subpoenaed power usage records for defendant's home, and omitted material facts regarding defendant's power usage, and provided false information regarding how he obtained defendant's Department of Motor Vehicle (DMV) records.

Defendant testified at the hearing. He stated his car was not outside his house on October 18, 1999, as claimed by Grant. On that date, his sister (who testified to the same) had borrowed his car. He also testified he had educated himself about the dangers of growing marijuana and never put anything relating to cultivation in the garbage because he knew that police could obtain a search warrant based on its discovery. He also denied throwing away the mail Grant claimed to have found because that mail contained unopened bills and loan documents. He was absolutely positive he did not throw them out on the date alleged. After he was arrested, he had told Grant that he usually double-bags the marijuana clippings and discards them in different Dumpsters around town. The officers recovered one of his bags of clippings from his garage during the search of his house.

Defendant also called numerous witnesses to establish that Grant had a pattern and practice of including similar misrepresentations in other search warrant affidavits he had authored. We recount this testimony as follows:

Sheri VanDerheydt testified her residence located at 4716 Kerwood Way in Sacramento was searched pursuant to a warrant on January 5, 1999, and no marijuana was found. She acknowledged, however, that after the search, her husband was arrested and charged with possession of marijuana. She testified that it was impossible for Grant to have found marijuana in her trash can on December 21, 1998, as he had alleged in the search warrant affidavit, because on that day there was an ant infestation and her husband had put the trash can out at the last possible moment. The trash was on the curb for only 40 minutes and, although she was packing for a trip, she kept an eye on it the entire time it was outside. She could see the trash can from her kitchen window and no one went through her trash before the trash collector arrived. Her husband, Rodney VanDerheydt, testified that any marijuana found in the residence during the execution of the search warrant was not his.

With respect to the VanDerheydt residence, Grant testified that he did search the trash after having transported it to a nearby location. It would have been dark outside at the time he collected the trash and he recalled there had been no visible movement and did not recall any lights on inside the residence. Sergeant Keven Besana also testified that he took part in the

search of the VanDerheydt trash in which they found marijuana. Besana also took part in the later search of the residence and the officers found brown paper bags of marijuana in two separate rooms.

Chris Miller also denied that Grant could have found "moist green stems recently cut from a true marijuana plant and two letters" during the search of his trash as alleged in Grant's affidavit. Miller testified he has never put marijuana stems or leaves in his trash, but instead, either composts them in his backyard or burns them in his fireplace. Miller admitted, however, that he does grow marijuana.

Besana testified that he participated in the search of Miller's trash and that marijuana was found during the search.

Amy Breeze testified that Grant lied in his search warrant affidavit for her residence at 3965 Folsom Boulevard in Sacramento. She stated the car in her driveway that Grant averred he ran with DMV (and DMV showed was registered to her) had not even been registered in the state. Moreover, the license plate number Grant indicated he saw on her car (K882335) was actually the number of her expired disabled person's placard and was never affixed to any vehicle at the residence. Breeze also testified that Grant's averment that he had contacted Sacramento County Waste Management to find out the day refuse was collected was false because the collecting entity for her residence was Sacramento City Solid Waste Management. Breeze also denied having discarded the letters Grant said were found in her trash and claimed Grant could not have found marijuana leaves and stems in her trash because she made it a practice to never so dispose of such items.

Grant offered explanations for the discrepancies. During his testimony, he explained that the statement that "license plate number C882335" was on a vehicle in front of the residence was an inadvertent inaccuracy. He and his partner went by the residence and wrote down the license plate numbers of the two vehicles that were there; however, the placard number had already been written on that piece of paper and, when preparing the affidavit, he accidentally wrote down the wrong number. He also testified that he composed his search warrant affidavits from a template and, if he identified the wrong waste collection entity, it was the result of an inadvertent failure to correct the name which generally appears on the template. Besana testified that he participated in the trash search and that marijuana was found in the trash.

Robert Whiteaker also testified that Grant had included false averments in the search warrant affidavit for his residence located at 7230 6th Street in

Rio Linda. The affidavit stated that Whiteaker's Dodge Caravan was in the driveway of the residence on April 12, 1999. Whiteaker testified that April 12, 1999, fell within a six-week period, the entirety of which the Caravan was undergoing repairs at a transmission shop. Whiteaker's testimony was supported by both a receipt from the towing service showing the vehicle had been towed in on March 25, 1999, and a repair order for May 5, 1999, and by the testimony of Wes Donnel, the owner of the transmission shop, who verified that the shop had possession of the vehicle in April of 1999. Whiteaker also denied that Grant could have found fresh marijuana in his trash as averred in the search warrant affidavit because he disposed of all clippings in a mulch pile in the backyard.[3]

Grant testified that he could have been mistaken in his affidavit regarding the date he observed the vehicles in the driveway of the Whiteaker residence, since he had started looking at the residence in early March and had seen the two vehicles listed on the affidavit a few times during the early part of March. Grant was also at the residence on April 12, 1999, to perform a trash search but arrived too late. He testified it was possible he could have a March date instead of an April date for the date he observed the vehicles in the driveway.

Robert DeArkland also asserted that Grant had made false statements in the search warrant affidavit for his residence located at 8553-B Almaz in Fair Oaks. DeArkland testified that Grant could not have found "fresh leaves and moist stems from mature marijuana plants" in his garbage on the date of the alleged trash search as stated in the affidavit because DeArkland's 13 marijuana plants were no more than 18 inches tall at that time and he would never cut anything off plants of this size. Additionally, the trash can was not located directly in front of his house as Grant averred, but was located in front of the neighbor's house. Also, Grant could not have seen DeArkland's truck parked outside the residence because he always parks his truck in the back where it is not visible from the street.

Both Grant and Besana testified that they participated in the search of DeArkland's trash and found marijuana during the search. Grant also specifically recalled seeing DeArkland's vehicle at the residence parked in front of an open garage door, and recalled DeArkland being present and watching Grant.

A warrant to search the residence at 7112 Grenola Way, supported by an affidavit by Grant, was also entered into evidence. The affidavit states that a

---

[3]When Whiteaker could not recall if the search of his residence resulted in the discovery of more than five or about 300 marijuana plants, the court stated, "I have no faith in this witness here."

January 7, 1999, trash search at the residence recovered "fresh green and still moist" "marijuana stems recently cut from a mature marijuana plant." The affidavit also states that Sacramento Municipal Utility District (SMUD) records reflected the residence's power usage for the prior 12 months (13431 KW) to be "30 percent to over 300 percent higher" than the power usage at "other like residences," specifically 7116 Grenola Way (4534 KW), 7128 Grenola Way (7621 KW), and 7133 Grenola Way (8456 KW). A January 11, 1999, subpoena to SMUD that had attached a partial record for 7112 Grenola Way, and records for 7116 Grenola Way, 7128 Grenola Way and 7133 Grenola Way was also admitted into evidence. Also attached were records for 7121 Grenola Way, which was not included in Grant's affidavit as a comparison residence, and which reflected a power usage of 12386 KW. Grant testified he could not recall whether he had the written records from this subpoena when he prepared his affidavit. Grant also explained that he sometimes investigates the reason for the high usage when one of the comparison residences has an "extraordinarily high power" usage. Grant did not recall, however, if he did so with respect to the Grenola Way residences.

Defendant also called two representatives from SMUD to testify at the hearing. Through their testimony it was established that SMUD no longer had any pre-1999 records (including any subpoenas) which may reflect which SMUD power usage records Grant may have requested or what information was sent pursuant to any of Grant's subpoenas; that after a subpoena was served, SMUD sometimes gave power usage information over the telephone; that SMUD had given Grant power usage information over the telephone in the past, but that neither had any recollection of any information they may have provided to Grant for any address relevant to this case.

At the conclusion of the hearing, the court made the following ruling: "In reviewing my notes, considering all the items that have been presented to the Court, I am very confused about the SMUD thing, so I eliminated that, redacted that from the affidavit.

"The car thing, if he is—I may give you the benefit of the doubt on that.

"I am not, though, confused about the garbage. I think the garbage is good. I think, with that being the case, there [are] sufficient [facts] to uphold the warrant.

"The Motion to Traverse is denied."

Thereafter, defendant pled no contest to possession of marijuana for sale. (Health & Saf. Code, § 11359.) The court suspended imposition of sentence

and placed defendant on probation for a term of three years. As a condition of probation, defendant was to serve six days in county jail.

## DISCUSSION

### I

*Defendant Received a Fair Hearing on His Motion to Traverse the Warrant*

Under *Franks, supra,* 438 U.S. 154, a defendant attacking a search warrant has the burden of first establishing a sufficient threshold to warrant an evidentiary hearing by demonstrating that there were reckless or deliberate material misstatements of fact in the affidavit for the search warrant. This is a factual showing. The court "must conduct an evidentiary hearing if a defendant makes a substantial showing that: (1) the affidavit contains statements that are deliberately false or were made in reckless disregard of the truth and (2) the affidavit's remaining contents, after the false statements are excised, are insufficient to justify a finding of probable cause. At the evidentiary hearing, if the statements are proved by a preponderance of the evidence to be false or reckless, they must be considered excised. If the remaining contents of the affidavit are insufficient to establish probable cause, the warrant must be voided and any evidence seized pursuant to that warrant must be suppressed. [Citation.]" *(People v. Bradford* (1997) 15 Cal.4th 1229, 1297 [65 Cal.Rptr.2d 145, 939 P.2d 259], citing *Franks.*) Defendant bears the burden of showing material misstatements in the affidavit. *(Ibid.)*

Defendant contends he was denied his due process right to a full and fair hearing when the court excluded proffered evidence relevant to Grant's credibility. Defendant contends he was prejudiced by the exclusion of this additional circumstantial evidence because, had the court heard and been persuaded by this evidence, it may have been convinced that Grant was untruthful about the trash search. Without the information about the trash search, there would be no probable cause to issue the search warrant.

Defendant argues the following evidence should have been admitted: (1) 23 search warrant affidavits from unrelated cases in which the averments made by Grant are essentially identical to those in the search warrant affidavit for defendant's residence (i.e., the affiant went through the trash and found fresh, moist marijuana clippings, compared SMUD records and ran DMV records); (2) a search warrant affidavit for 8418 Ascolano Way in which Grant included only three power comparisons but where he requested four comparisons from SMUD; (3) a bag of marijuana leaves seized from

defendant's home when the search warrant was served; and (4) photographs of the trash evidence and a large bag of marijuana leaves seized from a Folsom Boulevard residence and booked into evidence a month after the search. We shall address each of these in turn.

A.  *Twenty-three Search Warrant Affidavits*

Defendant argues the 23 other search warrant affidavits should have been admitted for the purpose of showing the similarity in the averments. While finding fresh, moist marijuana cuttings in the trash of 23 separate individuals about the same time would be highly unusual and would therefore be relevant to undermining Grant's credibility and the accuracy of his affidavits, the record does not demonstrate the other affidavits were ever offered in evidence and excluded. Instead, there was merely a discussion between defense counsel and the court.

After defense counsel proffered a search warrant served upon a separate residence on another occasion, and the court asked what other evidence was going to reveal the relevance of the proffered warrant, the following colloquy took place:

"[Defense counsel]: I think it is relevant because it goes to the credibility of this officer. It goes to one of the search warrants that he indicated he had subpoenaed the SMUD records, for which we have the documents that were provided by SMUD that showed there was no—

"THE COURT: Let me—but there is also testimony by SMUD they might have handled it without doing the—

"[Defense counsel]: I have a proffer on that too . . . .

"THE COURT: Not allow it in. You already made your point on that. That is a side track issue. . . ."

Thereafter, the colloquy continued as follows:

"[Defense counsel]: Part of listening to the facts is to—and, again, the SMUD records—is to determine whether or not there's been false allegations made in other search warrants. I mean we have 23 search warrants that essentially say identical things, 'We went through the trash we did the SMUD, we did the DMV, and we got a search warrant.' We are talking about 23—almost exactly all alike.

"THE COURT: That is not—let me say something in that regard. I sign more search warrants than anybody else in this county. Most search warrants are all alike. I don't get original search warrants—

"[Defense counsel]: Then we have situations where—

"THE COURT: —because most of the facts are the same, not just here, but, normally, I get cases there has been—and I'm not going one way or another; I am thinking out loud—there is [*sic*] cases where there is a confidential informant, there is a secret, and there is a buy. All those warrants are the same; the person was searched, go in and make a search. Nothing extraordinary.

"[Defense counsel]: No, there is not, except, in this case, we found that, in numerous of them, over ten, that these suggestions that they got subpoenaed records or they subpoenaed records from SMUD—"

There was no further discussion about the 23 other search warrants. Consequently, defense counsel never requested the documents be admitted in evidence and the court made no ruling excluding them. As we shall explain, in these circumstances, we can find no error.

■ The procedures for offering a writing (such as a search warrant affidavit) in evidence are the same in civil and criminal cases. (See Pen. Code, § 1102.) "The writing should be offered in evidence and given an identifying exhibit number. [Citations.]" (3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, § 149, p. 213.) The proper method for offering a writing in evidence is as follows: (1) mark the writing for identification; (2) disclose to opposing counsel; (3) disclose to judge; (4) Demonstrate admissibility of writing; (5) offer writing into evidence; and (6) obtain court's ruling on admissibility. (2 Cal. Trial Practice: Civil Procedure During Trial (Cont.Ed.Bar 3d ed. 2001 supp.) Trial Exhibits, § 13.45, p. 753.)

An offer in evidence typically takes one of the following forms: "Your honor, I ask that Plaintiff's Exhibit 1 be received in evidence," or, "Your honor, I move that Plaintiff's Exhibit 1 be admitted into evidence." (2 Cal. Trial Practice: Civil Procedure During Trial, *supra*, Trial Exhibits, § 13.55, p. 760.)

The offer of the exhibit (in this case a writing) in evidence, is the formal request to the court to make a ruling on the admissibility of the exhibit.

■ In this case, none of the 23 warrant affidavits was marked as an exhibit; there was no offer of the 23 affidavits in evidence; and the trial court made no ruling thereon. Because the 23 warrant affidavits were not marked for identification, they do not appear in the record on appeal. Trial counsel's remark that, "we have 23 search warrants that essentially say identical

things" was not an offer in evidence of the warrants or their supporting affidavits. Because defendant's trial counsel never offered the 23 warrant affidavits in evidence, and received no ruling on their admissibility, there is no ruling for this court to review, and defendant's contention of error may not be sustained. (See *People v. Rowland* (1992) 4 Cal.4th 238, 259 [14 Cal.Rptr.2d 377, 841 P.2d 897]; *Frank v. Dominick* (1953) 122 Cal.App.2d 45, 52-53 [264 P.2d 161]; *Spanfelner v. Meyer* (1942) 51 Cal.App.2d 390, 391-392 [124 P.2d 862].)

### B. Search Warrant Affidavit for 8418 Ascolano Way

In response to defendant's proffer of the search warrant affidavit for 8418 Ascolano Way as a second example of Grant's having left a fourth higher power usage comparison off his affidavit, the court flatly refused to admit the evidence. We find any error in excluding this evidence harmless since the court excised the SMUD information from the affidavit. With the SMUD information excised, the only probative value of the proffered evidence was tangential to Grant's general credibility. Considering the substantial amount of evidence attacking Grant's credibility that was received into evidence, we do not find it reasonably probable a more favorable result would have been reached had the evidence been admitted. (See *People v. Boyette* (2002) 29 Cal.4th 381, 427-428 [127 Cal.Rptr.2d 544, 58 P.3d 391], rehg. den. Feb. 11, 2003 [proper standard of review of rejection of some evidence concerning a defense is that announced in *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], and not the stricter beyond-a-reasonable-doubt standard reserved for errors of constitutional dimension stated in *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]].)

### C. Bag of Marijuana Seized from Defendant's Home

When defendant requested to present the bag of marijuana leaves seized from defendant's home to corroborate his claim that he bags his marijuana clippings for off-site disposal, the court replied, "That has nothing to do with this affidavit." Defendant contends the trial court erred.

" 'Relevant evidence' means evidence, *including evidence relevant to the credibility of a witness* . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210, italics added.) It was error to exclude this relevant evidence, which tended to corroborate defendant's testimony, but the error was harmless because there was no dispute that the officers recovered the bag of marijuana clippings in the search of defendant's residence.

### D. *Photographs of Trash Plus Bag of Marijuana Seized from Folsom Boulevard Residence*

Finally, when defendant proffered the photographs of the trash evidence and a large bag of marijuana leaves seized from a Folsom Boulevard residence but kept at a covert search location for a month, apparently to provide visual evidence that Grant had ready access to such items, the court stated, "No. Too much, folks. Too much." The court's comment may be fairly construed as a ruling under Evidence Code section 352 that the evidence was cumulative and/or unduly time consuming. ▮ "A trial court's exercise of discretion in admitting or excluding evidence [under Evidence Code section 352] is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10 [82 Cal.Rptr.2d 413, 971 P.2d 618].) In light of the amount of evidence received by the court on the question of Grant's credibility, and in light of the obvious purpose supplied for the admission of this particular evidence, we cannot say the court's decision to exclude the proffered evidence was arbitrary, capricious, or patently absurd. Thus, we find no error.

In sum, we conclude defendant received a full and fair hearing.

### II

### *The Warrant Was Supported by Probable Cause*

As noted, defendant received a fair *Franks* hearing. At the conclusion of the hearing, the court stated it was confused and redacted the SMUD information from the affidavit. ▮ Defendant contends insufficient information remained in Grant's affidavit to support a finding of probable cause for the search warrant. We disagree.

Even absent the information in the affidavit that defendant used substantially more power over the previous nine-month period than the comparable residences in his neighborhood (a fact that may indicate he was utilizing grow lights, fans, and other electrical devices to cultivate indoors), the fact remained that a search of defendant's trash produced marijuana stems and leaves recently cut from a mature plant. Grant's explanation that, based on his training and experience, stems are routinely discarded by those growing marijuana was also included in the affidavit. We disagree with defendant that this was insufficient to establish the requisite probable cause to issue the search warrant.

■ "The question facing a reviewing court asked to determine whether probable cause supported the issuance of the warrant is whether the magistrate had a substantial basis for concluding a fair probability existed that a search would uncover wrongdoing. [Citations.] 'The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1040-1041 [99 Cal.Rptr.2d 1, 5 P.3d 68], quoting *Illinois v. Gates* (1983) 462 U.S. 213, 238-239 [103 S.Ct. 2317, 2332-2333, 76 L.Ed.2d 527].) "[T]he warrant can be upset only if the affidavit fails as a matter of law [under the applicable standard announced in *Illinois v. Gates, supra,* 462 U.S. at page 238 [103 S.Ct. at page 2332]] to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause, since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit as well as when presented by oral testimony. [Citations.]" (*Skelton v. Superior Court* (1969) 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485].) This standard of review is deferential to the magistrate's determination. (*People v. Hepner* (1994) 21 Cal.App.4th 761, 775 [26 Cal.Rptr.2d 417].)

■ The discovery of recently cut marijuana stems and leaves in a trash can that has been shown to contain defendant's residential trash establishes a fair probability (i.e., probable cause to believe) that contraband may be found in his residence. Defendant cites to *People v. Gray* (1976) 63 Cal.App.3d 282, 289 [133 Cal.Rptr. 698] for the proposition that finding marijuana in his trash on a single occasion is not sufficient. However, *Gray* upheld the sufficiency of a warrant affidavit. (*Id.* at p. 291.) While *Gray* involved prolonged observation of marijuana debris in the individual's trash left in an apartment complex dumpster, along with suspicious traffic in and out of the individual's residence, there is nothing in *Gray* to suggest that lesser factors such as those in this case would not constitute probable cause.

We are also aware of the recent decision from the First District, Division Four, in *People v. Pressey* (2002) 102 Cal.App.4th 1178 [126 Cal.Rptr.2d 162], where the court held that the discovery of illegal drugs, not for sale, in a vehicle during a traffic stop of an individual who is under the influence, does not necessarily provide probable cause to search the user's residence. (*Id.* at p. 1190.) Assuming without deciding that *Pressey* is correctly decided, it is easily distinguishable. *Pressey* involved the discovery of drugs in a vehicle, at a distance from defendant's residence, not in a trash can in front of a residence. (*Id.* at p. 1181.) Here, the recently cut marijuana stems and

leaves were found in front of defendant's residence in a trash can that contained letters belonging to defendant. Such facts are sufficient to connect the illegal activity with the residence.

Likewise, defendant's reliance on *California v. Greenwood* (1988) 486 U.S. 35, 40-41 [108 S.Ct. 1625, 1628-1629, 100 L.Ed.2d 30] for the proposition that anyone could have access to the trash can once it was left on the curb for refuse removal and, therefore, what was found inside could not establish probable cause for the search of his residence is misplaced. Although *Greenwood* acknowledged that third parties may have access to trash left on the curb for removal, it did *not* conclude that the trash inside a can left at the curb did not probably come from the residence. Although it is *possible* that some third party put fresh marijuana clippings in defendant's trash, "Certainty is not required at this stage." (*People v. Andrino* (1989) 210 Cal.App.3d 1395, 1401 [259 Cal.Rptr. 17].) Rather, "probable cause '"means less than evidence which would justify condemnation . . . . It [describes] circumstances which warrant suspicion.' " [Citations.]" (*Humphrey v. Appellate Division* (2002) 29 Cal.4th 569, 573 [127 Cal.Rptr.2d 645, 58 P.3d 476].) In this case, there is a "fair probability" (*People v. Kraft, supra,* 23 Cal.4th 978, 1040) that the trash in defendant's trash can (including fresh marijuana clippings) came from defendant's house.

Thus, we hold that, even after redacting the SMUD information from the affidavit, the trial court properly concluded that sufficient information remained in the affidavit to support a finding of probable cause for the issuance of a search warrant for defendant's residence.

### DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 11, 2003.