Filed 8/1/16  P.v. Hill CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>MONTREAL DAJON HILL,<br><br>     Defendant and Appellant. | B263608<br><br>(Los Angeles County<br>Super. Ct. No. NA093497) |

APPEAL from a judgment of the Superior Court of Los Angeles County. James D. Otto, Judge.  Affirmed.

Stephen Temko, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant, Montreal Dajon Hill, appeals from a judgment after a jury convicted him of one count of first degree murder in violation of Penal Code[1] section 187, subdivision (a). The jury also found three firearm allegations to be true: appellant personally and intentionally discharged a firearm which caused great bodily injury or death (§ 12022.53, subd. (d)); appellant intentionally discharged a firearm (§ 12022.53, subd. (c)); and appellant personally used a firearm (§ 12022.53, subd. (b)). The jury found appellant not guilty of an attempted murder charge. The jury also found a gang allegation to be not true. The trial court sentenced appellant to 25 years to life for the murder plus a consecutive term of 25 years to life for the gun use enhancement (§ 12022.53, subd. (b)). The remaining allegations were stayed pursuant to section 654.

Appellant contends the trial court erred in admitting irrelevant and speculative evidence from a witness relating to what the witness thought was about to happen. Appellant claims the error was prejudicial because the testimony reduced the prosecution's burden of proving the killing was deliberate and premeditated. We find the trial court did not err and disagree that the ruling reduced the prosecution's burden. We affirm the judgment.

**Prosecution Evidence**

On September 25, 2012, Jennifer Z. and Gerardo Placencia, the murder victim, were returning home after taking one of Jennifer's friends home. Jennifer, who was 12 years old, was riding a scooter and Placencia was walking. As Jennifer and Placencia passed Sunrise Donut Shop on 7th Street in Long Beach, Placencia told her to "speed up" because they were being followed. As she sped up, Placencia was behind her. She then heard someone, also from behind her, say "Where are you from?" In about three seconds, Jennifer heard a gunshot.

Jennifer ducked down but could not hear anything because her ears were ringing from the gunshot. She saw a man on the sidewalk and two others in the street who

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2

passed by her.  Jennifer subsequently got back up on her scooter and went to a store on the corner of Rose and 7th Street for help.

Eric Deshon Hubbard was in custody at the time of trial.  Hubbard testified against appellant as part of a grant of leniency after pleading guilty to an accessory charge and a gang allegation charge.

Hubbard testified that, at about 8:40 p.m. on the evening of the shooting, he and Deshawn Brittman rode "Fixie" bicycles to the donut shop.  Appellant met them at the donut shop riding a beach cruiser.  The three men went into the donut shop so that Hubbard could change a $20 bill because Hubbard owed appellant some money.  Hubbard called appellant "Bo," but they were not really good friends.  They had a "hi and bye" relationship.  As they exited the donut shop, Hubbard saw Placencia, a Hispanic male, pass by with Jennifer, who is also Hispanic.

Appellant said to Hubbard and Brittman "Look."  Appellant said to Placencia "What's up, cuz?"  Placencia did not respond but continued to walk.  Placencia and Jennifer crossed the street.  Appellant "gave a head nod, basically like let's go after him."

Appellant hopped on his bicycle.  When Hubbard said, "What are you figuring to do?", appellant did not respond.  Hubbard then said, "Don't do nothing stupid."  Brittman told appellant the same thing.  Appellant "had some kind of expression on his face."  Appellant began following Placencia and Jennifer.  Hubbard and Brittman, who were on their bikes, started following appellant.  Hubbard was very concerned about the "little girl."

Hubbard and Brittman were riding in the street.  Because appellant was on the sidewalk, Hubbard told him to get on the street but appellant did not acknowledge Hubbard.  Hubbard then saw appellant take a gun from his pocket or jacket and shoot Placencia twice in the back.  Prior to appellant's taking the gun out, Hubbard did not know appellant had a gun.  Hubbard was startled, surprised and scared when appellant shot Placencia because Hubbard was not expecting it.  Placencia died from one of the gunshots to his back.

3

Hubbard went home after the shooting. Appellant came to Hubbard's house later that night and told Hubbard "you know what happen[s] to snitches."

Hubbard, who was arrested the next morning, initially lied to detectives. Hubbard testified that he decided to be honest after a detective told him that the police had video images showing Hubbard at the scene. Security camera images from the donut shop and a marijuana collective showed the events of the night. Three young Black males subsequently identified as appellant, Hubbard and Brittman were shown entering and leaving the donut shop and riding their bikes down the street. The videos also showed appellant shooting Placencia. At the trial, Hubbard identified himself, appellant and Brittman from the images taken from the video cameras from the donut shop and a marijuana collective near the shooting.

On the evening of the shooting, Long Beach Police Department Detective Malcolm Evans saw appellant on a street corner with a group of subjects in a heated discussion. Detective Evans thought appellant resembled one of the men he had seen on the donut shop video. Appellant was wearing a dark shirt, gray cutoff jeans, white socks and dark shoes when he was in the donut shop and when Detective Evans saw him on the street.

Appellant admitted to the police that he was a member of the Grape Street Crips gang. Appellant was arrested that evening. Police found a beach cruiser and two "Fixie" bikes at Brittman's home the next day.

Los Angeles Police Department Officer Jason Archie testified as a gang expert. Officer Archie had testified as a Grape Street Crips gang expert over 50 times. He testified that murder is one of the primary activities of appellant's gang. In gang culture, asking a person where they are from is like a declaration of war. In the past, the person asking would allow the person to answer. Now, the gang members just start shooting no matter how the victims answer the question.

Officer Archie testified that appellant was a member of the Grape Street Crips gang because appellant admitted being a member. Appellant also had gang tattoos. In Officer Archie's opinion, a shooting done under the circumstances of this case would

4

have been done for the benefit of, at the direction of and in association with a criminal street gang to cause fear and intimidation. If people know that they kill people, it enhances their reputation and discourages people from calling the police or testifying in court. The shooter is benefited because his reputation is enhanced and his membership in the gang is bolstered.

Appellant's only defense evidence was Hubbard's leniency agreement, which was admitted into evidence.

## DISCUSSION

Appellant claims the trial court committed reversible error by allowing Hubbard to testify about what he thought was going to happen. The trial court overruled defense counsel's objection that the evidence was speculative. Appellant argues that the ruling was erroneous because Hubbard's testimony was irrelevant, speculative and prejudicial.

Only relevant evidence is admissible. (Evid. Code, § 350.) Except as otherwise provided by statute or law, "all relevant evidence is admissible." (Evid. Code, § 351; *People v. Carter* (2005) 36 Cal.4th 1114, 1166.) "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) While a trial court has broad discretion to determine the relevance of evidence, it lacks discretion to admit irrelevant evidence. (*People v. Lopez* (2013) 56 Cal.4th 1028, 1058; *People v. Heard* (2003) 31 Cal.4th 946, 973.)

Speculative evidence is irrelevant evidence. (*People v. Babbitt* (1988) 45 Cal.3d 660, 682.) "'[T]he prohibition against an examiner's question that calls for an answer based on speculation and conjecture is also founded on the concept of relevancy. Such testimony is irrelevant, because it does not have a tendency in reason to prove or disprove the disputed issue on which the testimony is proffered.' [Citation.]" (*People v. Rodriguez* (2014) 58 Cal.4th 587, 630-631.)

In this case, the issue arose after Hubbard testified that appellant nodded his head, meaning that they should go after Placencia. Hubbard then asked appellant what

5

appellant was planning to do. Appellant, however, did not respond and began to follow Placencia. Hubbard began to follow appellant. Appellant claims prejudicial error from the following exchange between the prosecutor and Hubbard about the subsequent shooting.

"Q: You followed [appellant] when he made that head motion, you're in the street, and you told [appellant] to basically get in the street? [¶] A: Yes. [¶] Q: Now, at this point, because maybe the jury is having trouble believing this, but at that point in time, did you think something bad was going to happen? [¶] A: Yes. [¶] Q: Why did you think something bad was going to happen? [¶] A: Because he wasn't listening to what I was saying."

At this point, defense counsel objected that the testimony was speculative. After the trial court overruled the objection, the prosecutor repeated the question about why Hubbard thought something bad was about to happen, to which Hubbard responded, "Because [appellant] didn't listen. He didn't give me no motions or nothing. He just focused straight ahead." The prosecutor then queried, "When you say he was 'focused straight ahead,' he was riding his bike on that sidewalk following that male Hispanic who he just asked, 'What's up, cuz?' right?" Hubbard responded, "Yes."

The following colloquy between the prosecutor and Hubbard then occurred: "Q: You thought something bad was going to happen; you're in the middle of the street? [¶] A: Yes. [¶] Q: And as you thought something bad was going to happen, you were still looking over at [appellant], correct? [¶] A: Correct. [¶] Q: That's when you saw [appellant] shoot? [¶] A: Yes."

Appellant asserts that Hubbard's testimony was irrelevant and speculative. Appellant also contends the questions elicited a lay opinion which was based on speculation and conjecture.

## I. The Arguments Have Not Been Forfeited.

The Attorney General preliminarily argues that the evidentiary arguments have been forfeited because defense counsel did not object to the initial question about what Hubbard thought might happen. Defense counsel only objected after the testimony was

admitted into evidence and then did not raise additional objections when the prosecutor continued to ask questions along the same line. Defense counsel did not move to strike the testimony. The Attorney General also asserts that appellant has raised the separate issue of whether the testimony called for improper lay opinion which is not cognizable on appeal.

"Evidence Code section 353, subdivision (a) allows a judgment to be reversed because of erroneous admission of evidence only if an objection to the evidence or a motion to strike it was 'timely made and so stated as to make clear the specific ground of the objection.'" (*People v. Demetrulias* (2006) 39 Cal.4th 1, 20.) The specific ground of the objection is not cognizable on appeal unless the party made a timely and specific objection in the trial court. (*Ibid.*)

We disagree that the claim that the testimony was speculative has been forfeited. The record shows that defense counsel did not object to the first question as to whether Hubbard thought something bad was going to happen. However, defense counsel then objected to the very next question about why he thought something bad was going to happen on the ground it was speculative. After the trial court overruled the objection, the prosecutor's follow-up questions were along the same line of inquiry about Hubbard's thought processes. Defense counsel's objection as to this line of questions was sufficient to preserve the issue of whether the testimony was speculative.

Similarly, we disagree with the Attorney General that appellant's argument that the questions improperly called for a lay opinion has been forfeited. The argument on appeal is that the lay opinion was *speculative* and called for conjecture. Therefore, it is cognizable on the theory that it was speculative.

## II. The Evidence Was Properly Admitted.

As previously noted, appellant contends that Hubbard's testimony was erroneously admitted because it is irrelevant, speculative and conjectural. A trial court ruling on the admission or exclusion of evidence is reviewed for an abuse of discretion. (*People v. Scott* (2011) 52 Cal.4th 452, 491; *People v. Harrison* (2005) 35 Cal.4th 208, 230.)

7

Evidence Code section 800 states: "If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is: [¶] (a) Rationally based on the perception of the witness; and [¶] (b) Helpful to a clear understanding of his testimony." A witness must have personal knowledge to testify, but "personal knowledge of a matter may be shown by any otherwise admissible evidence, including his own testimony." (Evid. Code, § 702.) "'[A]n examiner's question asking a lay witness to testify to facts that the witness has not personally observed, or to state an opinion not based on his or her own observations, calls for speculation and conjecture by the witness and is prohibited by' Evidence Code sections 702 and 800. [Citation.]" (*People v. Rodriguez, supra*, 58 Cal.4th at p. 631.)

We are not persuaded that the trial court erred in overruling the objection that Hubbard's testimony was speculative. Hubbard testified that he heard appellant ask Placencia "What's up, cuz?" and then began to follow Placencia. Hubbard testified that appellant was riding the beach cruiser on the sidewalk while his two companions rode in the street. Appellant refused to acknowledge statements and questions posed to him by Hubbard and Brittman concerning appellant's conduct in following Placencia. Hubbard followed appellant because Hubbard was afraid for the little girl's safety. Hubbard subsequently testified that he thought something bad was going to happen. Hubbard's testimony supported Hubbard's perceptions that appellant was acting strangely in following Placencia and that Hubbard feared for Jennifer's safety. Hubbard's testimony about what he was thinking corroborated his testimony about his perceptions and why he followed appellant on that evening. The testimony was, therefore, relevant and not speculative. (Evid. Code, § 210; *People v. Thuss* (2003) 107 Cal.App.4th 221.)

Appellant also asserts that the testimony was based on an improper lay opinion. However, the testimony assisted the jury in gaining a "clear understanding of [Hubbard's] testimony" concerning the events leading up to the killing. (Evid. Code, § 800, subd. (b).) Hubbard's testimony was based on his perceptions. It was not based on the bare assertion that something bad was going to happen. Hubbard explained with

8

numerous details what he had observed prior to the shooting and why he decided to follow appellant. The details supported Hubbard's perceptions that appellant was acting strangely in following Placencia and that Hubbard feared for Jennifer's safety. (Evid. Code, § 800; *People v. Thornton* (2007) 41 Cal.4th 391, 429.)

Appellant also claims that the evidence was improper because Hubbard was allowed to render an opinion about appellant's state of mind in order to support the first degree murder conviction. "Generally, a lay witness may not give an opinion about another's state of mind. However, a witness may testify about objective behavior and describe behavior as being consistent with a state of mind." (*People v. Chatman* (2006) 38 Cal.4th 344, 397.) Appellant is incorrect that Hubbard's testimony improperly allowed him to speculate about appellant's state of mind in shooting Placencia. Hubbard never actually testified about appellant's state of mind. Hubbard's testimony did not speculate about why appellant was acting the way he was or purport to predict that appellant was going to shoot Placencia twice in the back. Indeed, as appellant points out, Hubbard actually testified that he had no idea appellant even had a gun.

In addition, although the evidence arguably supported an inference of malice in light of the other evidence in the case, the trial court did not err in overruling the objection. Hubbard only testified about why he felt something bad was going to happen based on his observations of appellant. Hubbard had previously testified about his perceptions of appellant's conduct in pointing Placencia out, asking him a question in gang vernacular, making a head gesture and then following him. Hubbard had also testified that appellant had "some kind of expression on his face." Appellant refused to acknowledge warnings from his companions that appellant should not to do anything stupid. Thus, Hubbard's testimony was based on his observations of appellant's comments, gestures, conduct and demeanor, all of which led Hubbard to believe something bad was about to happen. Although the evidence may have led to an inference of appellant's state of mind, Hubbard did not express an opinion of appellant's state of mind. Under the circumstances, the trial court did not abuse its discretion in admitting the evidence.

9

### III. Appellant Has Not Shown Prejudice.

Appellant contends that, without Hubbard's testimony about what he thought, the jury would only have found him guilty of second degree murder. Appellant argues that Hubbard's testimony reduced the prosecutor's burden of proving the killing was deliberate and premeditated. Even if we were to conclude that evidence should not have been admitted, we cannot conclude that it is reasonably probable that the jury would have reached a more favorable result in the absence of the error. (*People v. Partida* (2005) 37 Cal.4th 428, 439; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

First degree murder is an unlawful killing with malice aforethought, premeditation, and deliberation. (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.) A second degree murder also requires proof of malice but does not include the elements of premeditation and deliberation. (*Ibid.*) "'A verdict of deliberate and premeditated first degree murder requires more than a showing of intent to kill. [Citation.] "Deliberation" refers to careful weighing of considerations in forming a course of action; "premeditation" means thought over in advance. [Citations.]' [Citation.]" (*People v. Solomon* (2010) 49 Cal.4th 792, 812.) However, both premeditation and deliberation can occur within a brief interval of time. (*Ibid.*) "'"The test is not time, but reflection. 'Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.'"' [Citation.]" (*People v. Sanchez* (2001) 26 Cal.4th 834, 849.)

We cannot conclude that, in the absence of Hubbard's testimony about what he thought, it is reasonably probable that the jury would have reached a more favorable verdict. To begin with, Hubbard's testimony about what he thought was going to happen was only a very small part of the prosecution's case. There was other overwhelming evidence that appellant was guilty of first degree murder. Significantly, the jury was shown footage from security cameras taken from the donut shop and the marijuana collective. The combined footage from the two locations showed appellant in the donut shop, following Placencia and Jennifer, and then shooting Placencia twice in the back.

The jury also heard testimony that both Hubbard and appellant were admitted gang members. Jennifer heard a man say "Where are you from?" right before she heard a

10

gunshot. Officer Archie testified that those words in gang culture were a declaration of war. Once a gang member asked a victim that question, the gang member did not wait for the victim to answer but would just start shooting.

Consistent with that evidence, Hubbard testified that appellant asked a complete stranger "What's up, cuz?" after appellant, Hubbard and Brittman exited the donut shop. Appellant then made a head motion to his two companions to follow Placencia even though Placencia did not respond to appellant. Appellant began to pursue Placencia, who warned Jennifer to speed up, because they were being followed. Appellant refused to acknowledge questions and suggestions by Hubbard and Brittman that appellant should not do anything stupid. Hubbard testified that he saw appellant take a gun from his jacket and shoot Placencia twice in the back.

In sum, the footage coupled with testimony from Jennifer, Officer Archie and Hubbard provided sufficient and indeed overwhelming evidence that the killing was premeditated and deliberate. Therefore, even if Hubbard's testimony about what he thought was going to happen was erroneously admitted, it is not reasonably probable that the jury would have only found appellant guilty of second degree murder.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.


11