**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Pietro ALFANO, et al., Defendants,**

**Salvatore Evola, Girolamo Vito Palazzolo, Defendants–Appellees.**

**No. 85–1845.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 25, 1986.

Decided Jan. 29, 1988.

Rehearing and Rehearing En Banc Denied March 24, 1988.

---

Joel M. Shere, U.S. Atty., Michael R. Mueller, argued, Detroit, Mich., for plaintiff-appellant.

Richard M. Lustig [Evola] argued, Richard P. Zipser (Palazzolo) argued, Southfield, Mich., for defendants-appellees.

Before JONES, MILBURN and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

This case involves an extensive government investigation and surveillance of an alleged conspiracy for the importation of large quantities of heroin and cocaine from Italy, involving the cooperation of a number of Americans in New York, Illinois, Wisconsin and other states, and a number of Italians primarily from Sicily.[1]

The existence of an underlying conspiracy among some persons is not disputed

1. A number of the defendants herein have recently been convicted in trials in the United States District Court for the Southern District of New York, and sentenced to long prison terms. Case No. 84 CR 236 (Laval, D.J.); N.Y. Times, June 23, 1987, at Al, col. 5.

here. The dispute concerns the use at the trial of alleged conspirators of extensive tape recordings of conversations among the defendants and various admitted members of the conspiracy. These recordings were made pursuant to a warrant issued on February 3, 1984, by Chief United States District Judge John Feikens, under 18 U.S.C. § 2518(3). Defendants contend that this warrant is fatally defective because it rested primarily on records of a series of telephone calls secured by the use of a pen register authorized under another warrant whose validity is not contested here. The issue is whether the evidence of a number of calls made within relatively short periods of time among defendants here and admitted conspirators, coupled with other knowledge contained in the affidavit for the wiretapping warrant, constituted probable cause for issuance of that warrant. The trial judge, District Judge Ralph Freeman, held that probable cause did not exist, and suppressed all evidence stemming from the warrant-authorized tape recordings.

The government has taken an interlocutory appeal on this issue, as a very large part of the evidence that would be submitted at the trials of defendants Samuel Evola, Girolamo Vitale, and Girolamo Palazzolo consists of materials derived from sources growing out of the suppressed wiretap. We hold that the warrant issued by Chief Judge Feikens carefully complied with the requirements of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518(3), and we reverse.

I

The underlying evidence presented in the affidavit for a search warrant, which is not contested here, may be summarized as follows. The key players in our case, many of whom are related, are Salvatore Mazzurco, Pietro Alfano, Samuel Evola and Emanuele Palazzolo. Girolamo Palazzolo, a defendant in this case, is not involved in the events

at issue here. He was implicated later by materials developed under the wiretap at issue here. The trial judge agreed that the underlying conspiracy existed, and the connection to it of numerous persons was clearly shown. At issue is the evidence of Evola's connection to the conspiracy, and whether it is sufficient to authorize the issuance of a warrant for a tap on his phone.

A brief description of the parties and their relationship is in order at this time. Salvatore Evola is married to the niece of Gaetano Badalamenti, whom evidence shows to be the leader of an international drug smuggling conspiracy. Badalamenti resides in Sicily. Evola lives in Temperance, Michigan, near the Ohio border and near the Detroit airport. Pietro Alfano lives in Oregon, Illinois, about 100 miles from Chicago, where he operates Alfano's Pizza, a business one mile from the Pineway Liquor Mart. Mazzurco lives and operates a pizza parlor in Long Island, New York, while Emanuele Palazzolo lives in Wisconsin. The wives of Alfano and Palazzolo are sisters.

As District Judge Freeman agreed, in his opinions suppressing the wiretap evidence, the evidence was sufficient "for a reasonable person to conclude that numerous individuals such as defendants Alfano, Mazzurco and Vincenzo Randazzo are involved in the importation and trafficking of narcotics...."

II

Given these underlying facts, the undisputed evidence of the calls detailed by the authorized pen registers and by other wiretaps not contested here presents a series of circumstances which would certainly arouse the suspicions of even a mildly cynical person. The most interesting of these phone transactions are as follows: On November 24, 1983, Alfano placed a ten minute phone call to Sicily, and three minutes later called Evola.[2] On November 29, Alfa-

2. With the exception of some calls from Alfano to Mazzurco, which were recorded under authority of a warrant for tapping Mazzurco's phone, it cannot be proved that the persons named here actually spoke. Only telephone

no called Evola in Michigan in mid-afternoon. That evening, Evola placed a twelve minute call to Alfano, and later the same night Palazzolo called Alfano; Alfano immediately called Mazzurco and then called Sicily for ten minutes.

On December 4, Palazzolo called Evola, and six minutes later Alfano called Evola, Mazzurco and Palazzolo in rapid succession. That evening Evola called Alfano and spoke for eight minutes, and later that same night Palazzolo and Alfano traded calls. The next afternoon, Alfano called Evola for thirteen minutes. That evening Palazzolo spoke to Alfano for nearly one-half hour and, less than ten minutes later, Alfano called Evola and spoke for nearly ten minutes.

On the morning of December 12, there occurred a flurry of calls among Palazzolo, Alfano and Sicily. That afternoon, Alfano called Evola, and less than ten minutes later, Evola called Alfano and spoke for nearly fifteen minutes. Less than an hour later, Alfano called Mazzurco. On December 17, Palazzolo called Evola and fifteen minutes later Evola called Palazzolo back and spoke for fifteen minutes. Less than half an hour later, Palazzolo called Joseph Badalamenti in Mastic, New York.

There is also evidence obtained from the circumstances of travel to and from New York in late September 1983 and calls relating thereto. Those events began on September 25, with a collect call placed to Alfano's home from the vicinity of the Detroit airport and near Evola's home. The next day, Mazzurco was seen in New York receiving a brown paper bag from a known drug dealer, and then driving Alfano and Palazzolo to rent a car in Palazzolo's name. On the morning of September 27, a collect call was placed to Alfano's home from a phone along the highway from New York to Detroit. Later the same day, the rental car was returned in Toledo, Ohio. Toledo is not far from Evola's home, but distant from the homes of Alfano and Palazzolo. Two days later, Alfano and Palazzolo were again in New York, and were seen receiving a similar grocery bag from Mazzurco,

which they took to a hotel room registered to a Mr. Lupo, alleged to be the alias of Badalamenti's nephew, Vincent Randazzo, a member of the conspiracy. During that same week, two calls were placed from that hotel room to Evola, as well as a call to a Brazilian individual soon arrested in a Brazilian drug raid.

The affidavits for the warrant also indicated that phone calls were made in the summer of 1983 from a pay phone at Pineway Liquor Mart to Evola, to Brazil, and to Sicily at the same numbers used for calls made from Alfano's Pizza during the same time period. This circumstance, a common counter-surveillance technique, and the use of drug-related code in intercepted discussions between Alfano and Mazzurco are also relevant in assessing probable cause for the warrant.

The question presented is whether these circumstances provide sufficient reasonable, articulable suspicion to meet the probable cause requirements for the issuance of a warrant.

### III

The basic standards for a wiretap are similar to those for a search warrant, but there also must be strict compliance with Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520. *See United States v. Weinrich,* 586 F.2d 481, 487 (5th Cir.1978), *cert. denied,* 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979); *United States v. Feldman,* 535 F.2d 1175 (9th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976). That Act was enacted for the purpose of regularizing and controlling the issuance of warrants for wiretaps. At the same time, we are instructed that there is no specific formula that must be met for a warrant, and that evidence must be judged on the totality of the circumstances and in a reasonable and common sense manner. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Under this standard, the question that must be decided in issuing a warrant is

records were submitted, showing that a call was placed between two specific telephones.

whether there is probable cause to believe that evidence of a crime will be uncovered.

■■ Obviously, certainty is not required at this stage, and the exact quantum of support required has frequently been described as "a fair probability," but more than a "mere suspicion," that such evidence will be discovered. Facts can amount to a fair probability without being proof beyond a reasonable doubt or even a *prima facie* showing. *Id.* at 235, 103 S.Ct. at 2330. Since the issuing judge is in the best position to determine all of the circumstances in the light in which they may appear at the time, "great deference" is normally paid to the determination of an issuing judge. "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)). Thus, the fact that a later trial judge or reviewing court may feel that a different conclusion was appropriate does not require, nor even authorize, the suppression of evidence gained through such a warrant. In *United States v. Lambert,* 771 F.2d 83, 93 (6th Cir.), *cert. denied,* 474 U.S. 1034, 106 S.Ct. 598, 88 L.Ed.2d 577 (1985), we held that a magistrate's determination on the question of probable cause will not be reversed if the record contains a "substantial basis for his probable cause findings."

The leading case in our circuit bearing upon a wiretap fact pattern similar to this case is *United States v. Algie,* 721 F.2d 1039 (6th Cir.1983) (per curiam). There, we held that there was no probable cause for a warrant when the only facts presented were that a number of calls went from a known bookmaking establishment to the phone on which a tap was sought. Despite a dissent by Judge Krupansky, displaying a clear knowledge of how a bookmaking business was carried on and how such calls fit into the pattern of such an establishment, the majority held that the evidence did not demonstrate probable cause. However, the opinion in that case emphasized the limited nature of the evidence. *Id.* at 1043. No return calls were made from the receiving phone. There was never any close connection between the timing of a call and some other event either suspicious in itself or linked directly to the conspiracy or to an illegal act.

■■ In our case, however, there is a recurring pattern of multiple connections among the phone calls, between and among recognized members of the conspiracy, and connected to Evola, the key defendant in this case. The fact that a number of these calls were also made to or from pay phones, a common counter-surveillance technique, and that some discussions, recorded under other taps not contested here, involved a drug-related code, also adds to the evidence amounting to "a fair probability" that interception of further calls would reveal evidence of a crime.

On at least ten occasions, calls to or from Evola closely followed or preceded calls involving a member of the conspiracy. On two occasions, within fifteen minutes of receiving a call from one of the known members of the conspiracy, Evola placed a call to a known member of the conspiracy. On four occasions, a call to Evola from a member of the conspiracy occurred within sixty minutes of a call between the same person and another member of the conspiracy.

■■ While the defendants hypothesize that all of these calls could have simply involved innocuous family matters, the probable cause requirement does not require that every contrary hypothesis be excluded. The circumstances need only be such as to provide a person of reasonable caution, as represented by a neutral and detached magistrate, with evidence from which he could find that there was a likelihood that the business of the conspiracy was being furthered. There is probable cause if a " 'succession of superficially innocent events ha[s] proceeded to the point where a prudent man could say to himself

that an innocent course of conduct was substantially less likely than a criminal one.'" *United States v. Martin,* 509 F.2d 1211, 1213 (9th Cir.) (quoting *United States v. Patterson,* 492 F.2d 995, 997 (9th Cir.), *cert. denied,* 419 U.S. 846, 95 S.Ct. 82, 42 L.Ed.2d 75 (1974)), *cert. denied,* 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455 (1975). The evidence in this case provides ample reason to uphold such a finding. The material supporting the warrant certainly goes far beyond the evidence found to be insufficient in *Algie.*

The support for the warrant in this case is comparable to that in *United States v. Todisco,* 667 F.2d 255 (2d Cir.1981), *cert. denied,* 455 U.S. 906, 102 S.Ct. 1250, 71 L.Ed.2d 444 (1982). In that case, there was past information as to actual criminal activity by the targets of the taps, but none related to present activities. Thus, the probative information was essentially reduced to visible association with known drug dealers. *Id.* at 258. In this case, the apparent association was largely invisible, at least to the eyes of the authorities, having been carried out by telephone. This difference does not necessarily alter the quality of the information involved. In particular, the *Todisco* court noted, the assessment of the information is largely committed to the issuing magistrate, as the Supreme Court has indicated. *Ibid.* Thus, neither a trial judge nor an appellate court may exclude evidence gathered under a lawfully issued warrant solely on the basis that those judges would not have issued the warrant had they been in the magistrate's place. Based on the information before us, we would not be according appropriate deference to Chief Judge Feikens's evaluation of the warrant information, were we to hold that the showing was constitutionally insufficient.

## IV

The government also attacks a second ground on which the warrant was held to be insufficient.

The Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518(1)(c), requires a determination that other means of obtaining information, such as physical surveillance, use of informants, and other investigative techniques, would be unsuccessful.[3] Despite the evidence of the close-knit nature of the family group involved in the drug trafficking, and Evola's connection to it, the trial judge rejected the contention that an adequate "needs statement" had been made.

The needs statement provision was placed in the statute to ensure that a wiretap "is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn,* 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983, n. 12, 39 L.Ed.2d 225 (1974) (citation omitted). Thus, wiretaps are not to be used thoughtlessly or in a dragnet fashion. As our court has said, what is needed is to show that wiretaps are not being "'routinely employed as the initial step in criminal investigation.'" *United States v. Landmesser,* 553 F.2d 17, 20 (6th Cir.) (quoting *United States v. Giordano,* 416 U.S. 505, 515, 94 S.Ct. 1820, 1827, 40 L.Ed.2d 341 (1974)), *cert. denied,* 434 U.S. 855, 98 S.Ct. 174, 54 L.Ed.2d 126 (1977). However, the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted. *United States v. Brown,* 761 F.2d 1272, 1275 (9th Cir.1985). *See* S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 2112, 2190.

Our court has summarized this requirement in *Lambert,* 771 F.2d at 91 (citations omitted), as follows:

> All that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap

---

**3.** This section requires "a full and complete statement as to whether or not other investigative procedures have been tried and failed or

why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."

techniques have been or will likely be inadequate.

This is precisely what the government did in this case. It indicated the steps that had been taken with regard to other investigative targets, and the difficulties in placing an informant in or maintaining continual surveillance of those involved in far-flung operations, including involvement of a number of members of a close-knit family group. The government thus indicated both the "serious consideration" of other measures and the "reasons" for the belief in their inadequacy. We believe that the standards contained in the Act do not require proof of the absolute impossibility of all other means. Instead, a reasonable statement of the consideration or use of other investigative means is adequate, and was present in this case. The decision of the district court is REVERSED.