[No. F009926. Fifth Dist. May 26, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT J. ANDRINO, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II through IV.

## COUNSEL

Blackmon & Drozd, Dale A. Drozd and Steven Meinrath for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Jane N. Kirkland and Lisbeth Bellet, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEST, Acting P. J.**—Pursuant to Penal Code section 1538.5, subdivision (m), defendant appeals from a judgment of conviction following a negotiated guilty plea, challenging the trial court's denial of his motion to suppress evidence. We affirm.

## STATEMENT OF THE CASE

On June 9, 1987, a 63-count information was filed in the Stanislaus County Superior Court charging defendant Robert J. Andrino and one Kenneth Dekelaita with various gambling and bookmaking offenses. Defendant was charged with one count of maintaining a place for bookmaking in violation of Penal Code[1] section 337a, subdivision 2, one count of engaging in bookmaking in violation of section 337a, subdivision 1, and conspiracy in violation of section 182.

On August 13, 1987, defendant moved pursuant to section 1538.5 to suppress all evidence seized in the execution of a search warrant at his home. On September 22, 1987, and October 2, 1987, the parties presented evidence and argued the merits of the motion to suppress. The matter was submitted on the stipulation that the court would also consider the preliminary hearing transcript. The court below denied defendant's motion to suppress, except as to nine relatively insignificant items, finding sufficient probable cause to support the search warrant.

On October 22, 1987, defendant pled guilty to the charge of maintaining a place for bookmaking. (§ 337a.) On January 15, 1988, the court suspended imposition of sentence and granted probation.

## STATEMENT OF RELEVANT FACTS

Modesto police officers mounted a bookmaking investigation in 1984, targeting suspected bookmaker Kenneth Dekelaita. Evidence of bookmaking in connection with football games was developed. An undercover officer participated in illegal betting activities, but never had contact with or observed defendant in the course of the investigation. Defendant Andrino first came to the attention of law enforcement when the results of a pen register and telephone trap on Dekelaita's phone revealed numerous reciprocal calls between the Dekelaita and Andrino residences in November 1985.

As a result of information secured through surveillance of the Dekelaita telephone, Detective Don Clonts of the Modesto City Police Department believed that evidence of defendant's bookmaking activities would be found in his home in Turlock, California. In support of a search warrant, Detective Clonts submitted a 13-page affidavit, including dialed number register printouts showing the most frequently called numbers from the Dekelaita residence.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

■ ■■ ■■ In his affidavit in support of a search warrant, Clonts asserted that he had served a warrant on Pacific Telephone in October of 1985 seeking the placement of a dialed number register[2] and a trap/trace[3] on the telephone number of known bookmaker Dekelaita. The pen register, in operation for 30 days during October and November 1985, revealed the Dekelaita phone had been used to dial the Andrino telephone number (listed in the name of Catherine Andrino, believed to be defendant's wife and a resident of defendant's household as a subscriber to utilities there) 76 times. The frequency and pattern of these calls indicated Andrino's number was dialed "prior to the start of football games" on 12 occasions before calls to Frank Wisman and Marvin Miles, known bookmakers in Los Angeles, and on 13 occasions immediately following calls to Wisman and Miles.

The trap/trace on the Dekelaita phone number showed 230 calls originating from the Andrino telephone during the 30-day period.

Affiant Clonts, a 14-year officer with the Modesto Police Department, provided a history of special assignments in the investigation of vice and gambling violations and 200 hours of specialized training in the field. Based on his experience, the results of the phone pen register and trap, and Mr. Andrino's criminal background, Clonts opined that Kenneth Dekelaita called the Andrino residence for the purpose of laying off bets. ■ "A layoff bookie is a bookmaker who takes bets from another bookmaker . . . enabling the latter bookmaker to minimize his financial risk for a given bet by equalizing the amount of bets on each side." (*U.S.* v. *Gilley* (9th Cir. 1988) 836 F.2d 1206, 1209, fn. 2.)

On December 18, 1985, Detective Clonts, Detective Fernandez and several other officers, including United States Treasury agents, participated in a search of the Andrino residence. Various items indicative of bookmaking activity were discovered, including over $22,000 in cash, score sheets and ledgers of bets made.

Detective Clonts admitted that he had misread some of the information on defendant's prior convictions which resulted in inaccuracies in the affidavit in support of the search warrant. The affidavit reports: (1) a 1972 Nevada conviction for swindling; (2) a 1971 Arizona conviction for extortion; (3) a 1974 conviction for tax evasion; (4) a five-year federal sentence for extortion in 1974; (5) two prior bookmaking arrests, with a nolo conten-

---

[2] A dialed number register is a pen register, which is a mechanical device that records the numbers called on a telephone by monitoring electrical impulses. (*United States* v. *New York Telephone Co.* (1977) 434 U.S. 159, 161, fn. 1 [54 L.Ed.2d 376, 382, 98 S.Ct. 364].)

[3] A trap registers the telephone number source of all calls to a given number. (*People* v. *Suite* (1980) 101 Cal.App.3d 680, 684 [161 Cal.Rptr. 825].)

dere plea in one case in 1973. In testimony during the suppression hearing, Clonts conceded that a United States Department of Justice FBI rap sheet showed a 1974 arrest for tax evasion without a disposition of the case. It was also shown that the Nevada swindling conviction was in 1962 rather than 1972. Finally, the criminal conviction for extortion occurred in 1971 rather than 1974.

DISCUSSION

I

DID PROBABLE CAUSE SUPPORT THE ISSUANCE OF THE SEARCH WARRANT?

Defendant contends that the affidavit in support of the search warrant "informed the issuing magistrate of no more than the fact there were a number of telephone calls between Dekelaita's telephone and appellant's and the affiant's characterization of that telephone traffic as evidence of criminal bookmaking activity." This, according to defendant, is insufficient to establish probable cause for issuance of the warrant. We find that the evidence of telephone traffic and its interpretation by an experienced officer as consistent with bookmaking activity, coupled with the defendant's criminal record, establish probable cause for issuance of the warrant.

In reviewing denial of a motion to suppress, the trial court's findings must be upheld if they are supported by substantial evidence. (*People* v. *Nosler* (1984) 151 Cal.App.3d 125, 130 [198 Cal.Rptr. 653].)

" '[I]t is well settled that " '[t]he warrant can be upset only if the affidavit fails *as a matter of law* to set forth sufficient competent evidence supportive of the magistrate's finding of probable cause since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit. . . .' " ' (Italics in original.) [Citations.] In examining the affidavit for sufficiency of the facts therein to support the magistrate's finding of probable cause, it is axiomatic that the courts are to interpret the affidavit in a common sense, non-technical manner. [Citations.] The reviewing court will pay substantial deference to the magistrate's determination of probable cause [citation] and may sustain a search where one without a warrant would fail [citation].' (*People* v. *Emanuel* (1978) 87 Cal.App.3d 205, 212-213 [151 Cal.Rptr. 44].)" (*McKirdy* v. *Superior Court* (1982) 138 Cal.App.3d 12, 24 [188 Cal.Rptr. 143].)

The "appropriate standard of probable cause is whether the affidavit states facts that make it substantially probable that there is specific property

lawfully subject to seizure presently located in the particular place for which the warrant is sought." (*People* v. *Cook* (1978) 22 Cal.3d 67, 84, fn. 6 [148 Cal.Rptr. 605, 583 P.2d 130].) There is no specific formula for a warrant. The sufficiency of affidavits upon which warrants are issued must be judged on the totality of the circumstances. (*Illinois* v. *Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317].) Certainty is not required at this stage. The exact quantum of support required must be more than a "mere suspicion," but facts amounting to a fair probability without being proof beyond a reasonable doubt or even a prima facie showing are sufficient. (*Id.* at p. 235 [76 L.Ed.2d at p. 546].)

In the absence of California cases dealing with a similar telephone-tap fact pattern as that addressed here, defendant relies primarily on the case of *United States* v. *Algie* (6th Cir. 1983) 721 F.2d 1039. In *Algie,* over a vigorous dissent, the federal court of appeals found that information obtained from pen registers cannot be the sole basis for establishing probable cause. The supporting affidavit stated that a pen register record revealed that an office had been dialed approximately 15 times over an 11-day period from an apartment where gambling activity was going on. Affiant, an FBI agent, indicated his belief that the apartment's two telephones were being used to make "lay-off" bets. (*Id.* at pp. 1040, 1042.) The court found insufficient support for the warrant, which raised only a "mere suspicion" of criminal activity, particularly noting that pen registers do not indicate whether calls are completed and do not indicate whether a receiving telephone was answered or a conversation occurred. (*Id.* at pp. 1042-1043.) The court dismissed the affiant's assertion that telephones are commonly used to make lay-off bets. "The inference that contraband or evidence of illegal operations can be found on every premises called by known bookmakers is not the sort of reasonable inference required to support an intrusion." (*Id.* at p. 1043.)

The Sixth Circuit emphasized the narrowness of its holding. "We do not claim that information obtained through use of a pen register is irrelevant. We hold only that the pen register information, in light of the facts and circumstances of this case, is insufficient to support the magistrate's probable cause determination." (*United States* v. *Algie, supra,* 721 F.2d at p. 1043, fn. 6.) Here, the inference to support the intrusion is substantially stronger. There is no dispute that evidence obtained from pen registers and phone traps is relevant in determining probable cause. (*Ibid.*) Further, those versed in the field of law enforcement are properly charged with assessing probable cause. (*Illinois* v. *Gates, supra,* 462 U.S. at p. 242 [76 L.Ed.2d at p. 551].) "Law-enforcement officers may draw upon their expertise in translating activity that appears innocuous to the untrained mind into grounds supporting a search or arrest warrant." (*United States* v. *Laws* (D.C. Cir. 1986)

808 F.2d 92, 103 [257 D.C.App. 197].) Detective Clont's affidavit presented more than pen register information, primarily trap information and a particularized accounting of the timing of telephone calls in relation to sporting events and calls to other known bookmakers. The court below justifiably relied on the affiant's interpretation of the calls as evidencing bookmaking activities. Further, there was reliable information that defendant had been arrested on two prior occasions for illegal betting activities. Defendant's prior bookmaking arrests were relevant to the determination of probable cause. (*People* v. *Kershaw* (1983) 147 Cal.App.3d 750, 760 [195 Cal.Rptr. 311].)

Respondent distinguishes the *Algie* opinion in citing a later Sixth Circuit decision, *U.S.* v. *Alfano* (6th Cir. 1988) 838 F.2d 158. In *Alfano,* a warrant authorizing a wiretap[4] was challenged as fatally defective because it rested primarily on records of a series of telephone calls secured by the use of a pen register authorized under another warrant. The instant case is more closely analogous to *Alfano* because evidence of the calls detailed in support of the warrant involved not only a pen register but also other wiretaps. The court distinguished *Algie* as follows: "However, the opinion in that case emphasized the limited nature of the evidence. [Citation.] No return calls were made from the receiving phone. There was never any close connection between the timing of a call and some other event either suspicious in itself or linked directly to the conspiracy or to an illegal act." (*U.S.* v. *Alfano, supra,* at p. 162.)

In *Alfano,* the court considered the number of calls to or from the individual on whose phone the tap was sought and their proximity to calls to other members of the conspiracy. In the instant case, there is a recurring pattern of multiple connections between Dekelaita and Andrino and other suspects in the conspiracy coinciding with football games on which betting activity is suspected. The probable cause requirement does not require the elimination of innocuous explanations for these calls. (*U.S.* v. *Alfano, supra,* 838 F.2d 158, 162.) ■ There is probable cause if a " 'succession of superficially innocent events ha[s] proceeded to the point where a prudent man could say to himself that an innocent course of conduct was substantially less likely than a criminal one.' " (*United States* v. *Martin* (9th Cir. 1975) 509 F.2d 1211, 1213, quoting *United States* v. *Patterson* (9th Cir. 1974) 492 F.2d 995, 997.)

"The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe

---

[4] The basic standards for a wiretap are similar to those for a search warrant. (*United States* v. *Feldman* (9th Cir. 1976) 535 F.2d 1175.)

that the specific 'things' to be searched for and seized are located on the property to which entry is sought." (*Zurcher* v. *Stanford Daily* (1978) 436 U.S. 547, 556 [56 L.Ed.2d 525, 535, 98 S.Ct. 1970], fn. omitted.) ▮ Thus, the search warrant was not invalidated by any failure to establish who in the Andrino household was responsible for accepting and returning calls to Dekelaita.

The totality of facts and circumstances presented to the magistrate was clearly sufficient to establish probable cause for the search of defendant's residence.

### II-IV*

. . . . . . . . . . . . . . . . . . . .

Applying the above rules to the case at bench, we conclude that the motion to suppress evidence was properly denied.

### DISPOSITION

The judgement is affirmed.

Stone (W. A.), J., and Baxter, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 6, 1989.

---

* See footnote, *ante,* page 1395.