NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0034n.06

Case No. 21-1177

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| LUIS AYALA-VIEYRA, | ) ) | |
| Defendant - Appellant. | ) ) ) | |

FILED
Jan 21, 2022
DEBORAH S. HUNT, Clerk

BEFORE: BOGGS, GIBBONS, and NALBANDIAN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Luis Ayala-Vieyra was convicted by a jury for conspiracy to distribute and possess with intent to distribute cocaine and distribution of cocaine. On appeal, he argues the district court erred in denying his motions to suppress wiretaps, allowing jurors to be masked during voir dire, permitting phone transcripts to be read to the jury, failing to exclude expert testimony, applying a gun enhancement at his sentencing, and failing to credit him for acceptance of responsibility. We disagree and affirm the district court.

**I.**

We begin with a discussion of the relevant wiretap applications, before turning to Ayala-Vieyra's motions to suppress, trial, and sentencing.

## A.

In 2018 and 2019, the Drug Enforcement Administration ("DEA") investigated Gaston Silva for cocaine trafficking in Grand Rapids, Michigan. This investigation included applications for numerous wiretaps, eventually leading to a wiretap of Ayala-Vieyra's phone.

In April 2019, the government applied for interception of Gaston Silva's, Tony Silva's, and Teodulo Zepeda's phones, after physical and electronic surveillance indicated they were involved in distributing narcotics. The affiant described why traditional investigative techniques would not allow the government to fully complete its investigation. For example, individuals had thwarted physical surveillance, execution of search warrants too early would lead to detection of the investigation and result in destruction of evidence, and video surveillance was of limited use against a mobile drug organization. The interception of Gaston Silva's phone also helped investigators identify Luis Ayala-Vieyra and his brother, Inocencio Ayala-Vieyra, as drug suppliers. The district court authorized the wiretaps.

In May 2019, the government sought continued interception of Tony Silva's and Zepeda's phones and new interception of Inocencio Ayala-Vieyra's phone. For reasons similar to those explained in the April application, the affiant detailed why the wiretaps were necessary to fully investigate the numerous drug organizations. The district court authorized the wiretaps.

In July 2019, the government sought to continue interception of Inocencio Ayala-Vieyra's phone and to initiate interception of Luis Ayala-Vieyra's phone. Investigators identified Luis Ayala-Vieyra as a supplier for Inocencio, but were unable to identify the source of his supply. Again, the affiant described why the wiretaps were necessary. For example, a confidential informant provided some information, but was unable to provide information on the Ayala-

Vieyras' current narcotics activity. Surveillance and trash pulls were unsuccessful. The district court authorized the wiretaps.

**B.**

Luis Ayala-Vieyra was indicted for conspiracy to distribute and to possess with intent to distribute cocaine, as well as distribution of cocaine. He moved to suppress the wiretap evidence, arguing the applications for the wiretaps failed to establish probable cause and necessity. The district court denied the motions.

Ayala-Vieyra also moved for an order requiring the preparation of transcripts of ex parte hearings before the issuing judge on the wiretap applications. The district court denied the motions after the government affirmed it had not presented any additional evidence in those ex parte hearings.

**C.**

Ayala-Vieyra proceeded to trial on September 21, 2020. Because his trial took place during the COVID-19 pandemic, the district court took safety precautions including allowing jurors to wear face masks. Ayala-Vieyra objected, with his counsel arguing he did not know whether he could "adequately assess credibility of anyone wearing a mask." DE 210, Trial Tr., Page ID 1232. The district court overruled the objection, noting that the masks did not create a Sixth Amendment issue as the jurors were not witnesses and recognizing that jurors could be uncomfortable with unmasked fellow jurors given the health concerns presented by the pandemic.

During trial, the government proposed calling two people from its office to read to the jury transcripts that the parties agreed to admit. Ayala-Vieyra objected, arguing he thought "the best way is to have the jury read them." *Id.* at 1312. The district court overruled the objection,

explaining that it found no prejudice and would allow the government to decide how to present its evidence.

The government also called DEA Special Agent Thomas Burns. Before trial, Ayala-Vieyra moved to exclude Burns's expert testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), arguing that drug experts do not offer a reliable methodology nor provide testimony beyond the common knowledge of the average juror. The district court heard argument on the motion during the pretrial conference. The defense argued that Burns's general testimony that drug dealers talk in code was within the common knowledge of the jury. The government responded that Burns's testimony on how drug dealers use an "entire ad-hoc language" to avoid police would be helpful, as not all jurors were familiar with the practice. DE 129, Pretrial Tr., Page ID 696. The district court denied Ayala-Vieyra's motion, explaining:

> I appreciate the fact that the language used in these phone calls may be common to practitioners both on the prosecution and defense side and members of the judiciary, but to say that your average juror in the Western District of Michigan will understand code—use or code words and lingo in drug—in the drug trade, I think is a real stretch.

*Id.* at 697. After a three-day trial, the jury convicted Ayala-Vieyra on all counts.

## D.

In Ayala-Vieyra's Presentence Investigation Report ("PSR"), the probation office calculated an offense level of 32 and a criminal history category of I. The recommended Guidelines range was 121 to 151 months of imprisonment. Ayala-Vieyra raised numerous objections.

Ayala-Vieyra objected to receiving a two-level enhancement for possession of a firearm in connection with drug trafficking activities. He argued the gun found in his residence belonged and was registered to his wife and there was no evidence he stored drugs in proximity to the gun.

The district court overruled his objection, finding that Ayala-Vieyra stored drugs in his home and that the gun could be jointly possessed with his wife.

Ayala-Vieyra also objected to the absence of a reduction in his offense level calculation for acceptance of responsibility. The district court overruled the objection, explaining that Ayala-Vieyra went to trial and contested each element of the offense. Finding the drug weight calculation should be four levels lower than the PSR recommendation, the district court calculated a Guidelines range of 78 to 97 months in prison and sentenced Ayala-Vieyra to 78 months' imprisonment.

## II.

We discuss Ayala-Vieyra's arguments in chronological order, beginning with his pretrial motions to suppress the wiretap evidence.

## A.

When reviewing the district court's decision to suppress a wiretap under 18 U.S.C. § 2518, we review findings of fact for clear error and questions of law de novo. *United States v. Rice*, 478 F.3d 704, 709 (6th Cir. 2007). "Generally, a district court's finding that the requirements of § 2518(1)(c) [the necessity provision] have been met are afforded 'considerable discretion.'" *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002) (quoting *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977)).

Ayala-Vieyra argues the district court should have granted his motions to suppress the wiretap evidence because the government failed to establish probable cause or necessity in the wiretap applications. He also contends the district court should have provided him with transcripts of ex parte wiretap hearings.

**1.**

A wiretap application must establish probable cause "that an individual is committing, has committed, or is about to commit a particular offense" and "that particular communications concerning that offense will be obtained through such interception."  18 U.S.C. § 2518(3)(a)–(b). Probable cause does not require "certainty" but only a "fair probability" that is greater than mere suspicion.  *United States v. Alfano*, 838 F.2d 158, 162 (6th Cir. 1988).

Ayala-Vieyra argues that no probable cause supported the wiretaps because the phone conversations described in the affidavits did not allude to contraband and because the affiant made unsupported conclusions.  However, the affidavit explains how seemingly innocuous conversations are coded, based on the affiant's general experience as a DEA agent and specific experience with the investigation.

For example, texts were intercepted between Luis Ayala-Vieyra and Inocencio Ayala-Vieyra referring to a "key."  The affiant explained that "key" is a common code reference for a kilogram of narcotics.  This common shorthand, combined with the fact that cocaine was later found in Inocencio's car, supported the affiant's belief that the brothers were discussing narcotics in this conversation.  While Ayala-Vieyra may suggest alternative ways of reading the messages, "the probable cause requirement does not require that every contrary hypothesis be excluded." *Alfano*, 838 F.2d at 162.  Further, while the issuing judge should not simply accept an officer's speculation, the district court is permitted to rely on an officer's training and experience in weighing the overall evaluation of probable cause.  *United States v. Jackson*, 454 F. App'x 435, 439 (6th Cir. 2011).

The wiretap applications provide extensive detail on various conversations and corresponding surveillance that led investigators to conclude the targeted subjects were involved

in drug trafficking. Looking at the totality of the circumstances, this was sufficient to establish probable cause. *See Alfano*, 838 F.2d at 161; *United States v. Young*, 847 F.3d 328, 343–44 (6th Cir. 2017).

**2.**

Ayala-Vieyra also challenges the necessity of the wiretaps. An application for a wiretap under Title III must contain a full and complete statement of other investigative procedures that have been tried and failed or why they would be unlikely to succeed or are too dangerous. *Rice*, 478 F.3d at 709–10. This requirement "protects against the impermissible use of a wiretap as the 'initial step in [a] criminal investigation'" and ensures that a wiretap is not used when traditional investigative techniques would suffice. *Id.* at 710 (quoting *United States v. Giordano*, 416 U.S. 505, 515 (1974)). However, "the government is not required to prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." *Id.* (citation omitted). The investigators need only "give serious consideration to the non-wiretap techniques prior to applying for wiretap authority." *Id.* (citation omitted).

Ayala-Vieyra argues that "the affidavit dips into boilerplate" showing "the government's lack of effort in pursuing options" other than wiretaps. CA6 R. 19, Appellant Br., at 27, 30. Boilerplate language without any statements about the specific case at hand is insufficient to support a wiretap. *Landmesser*, 553 F.2d at 20. However, an affidavit is not ipso facto insufficient if it uses some generalized language, as long as it also includes circumstances specific to the present case. *See United States v. Wren*, 528 F. App'x 500, 504–05 (6th Cir. 2013). The affidavits in this case use some overlapping language that apply to most narcotics investigations but the affiant also provided details unique to Ayala-Vieyra.

For example, investigators conducted extensive physical surveillance of Ayala-Vieyra and tracked him visiting numerous residences, but they had insufficient information to determine which visits were drug related. A confidential informant provided some information about the Ayala-Vieyra brothers but could not contact them directly or provide any current information about their narcotics transactions. Surveillance also failed to identify narcotics customers. Given these circumstances specific to Ayala-Vieyra, the affidavit is not impermissibly boilerplate. *See Wren*, 528 F. App'x at 505.

Ayala-Vieyra argues the government could have done more. However, exhaustion is not required, and "the government need not prove the impossibility of other means of obtaining information." *Stewart*, 306 F.3d at 305. Therefore, the district court did not err in finding the necessity requirement satisfied and denying Ayala-Vieyra's motions to suppress. *See Young*, 847 F.3d at 344–45; *United States v. Asker*, 676 F. App'x 447, 459 (6th Cir. 2017).

**3.**

Ayala-Vieyra also argues the district court erred in denying his motions to order the ex parte wiretap hearings transcribed and disclosed. We review "decisions of the district court to seal court documents or records, as well as orders lifting or modifying a seal, for abuse of discretion." *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016).

Under 18 U.S.C. § 2518(8)(b), wiretap applications are sealed and "shall be disclosed only upon a showing of good cause." Ayala-Vieyra filed two motions seeking transcripts of ex parte hearings for wiretap applications, arguing that "[r]eview of the transcripts of the hearings are required in order to determine whether the Court had all of the information considered when the Title III applications were considered." DE 69, Mot., Page ID 304–07; DE 59, Mot., Page ID 274–75. The government responded that there was no good cause to unseal the transcripts as it affirmed

that "it presented no additional evidence during those hearings that was not included in the written applications, which have already been disclosed." DE 73, Resp., Page ID 311–12; DE 63, Resp., Page ID 279–80. Accepting the government's affirmation, the district court found no good cause to unseal the transcript where Ayala-Vieyra had the wiretap applications and supporting affidavits.

Ayala-Vieyra argues that the district court should not have accepted the government's affirmation but cites no authority that this is improper, particularly here where the district court only considered the disclosed documents to find probable cause and necessity for the wiretaps. As the wiretap applications and supporting affidavits were disclosed to the defense, the district court considered only those documents in ruling on the motions to suppress, and the government affirmed that no further evidence was provided at the hearings, the district court did not abuse its discretion in denying Ayala-Vieyra's motions for ex parte hearing transcripts.

**B.**

Ayala-Vieyra raises numerous issues with his trial: the jurors were masked during voir dire; phone transcripts were read to the jury; and Burns testified as an expert on drug trafficking practices. We review a district court's manner of conducting voir dire, rulings on evidentiary challenges, and admission of expert testimony for abuse of discretion. *See United States v. Tocco*, 200 F.3d 401, 411, 418 (6th Cir. 2000); *United States v. Tragas*, 727 F.3d 610, 614 (6th Cir. 2013).

**1.**

During voir dire, defense counsel objected to prospective jurors wearing masks, claiming he could not adequately assess credibility. The district court overruled the objection, noting that jurors were not witnesses implicating the Sixth Amendment and that the health circumstances of the COVID-19 pandemic warranted masking.

On appeal, Ayala-Vieyra argues this was error as "[f]acial expressions tell much about credibility" and therefore implicate the Fifth and Sixth Amendments. CA6 R. 19, Appellant Br., at 62. He contends that potential jurors could have used clear face masks to balance the need to minimize health risks with that of seeing jurors' faces. First, defense counsel did not suggest face shields to the district court despite "the ease with which" Ayala-Vieyra now says they could have been used. CA6 R. 19, Appellant Br., at 61. Second, Ayala-Vieyra cites no authority that seeing the bottom of the jurors' faces is constitutionally required. Courts have consistently held to the contrary.[1]

The district court did not abuse its discretion in having jurors masked in voir dire during a global pandemic.

**2.**

Ayala-Vieyra also argues that the district court erred in allowing government personnel to read transcripts of phone exchanges aloud to the jury. At trial, defense counsel objected to the government reading transcripts out loud because of an unnamed "danger." DE 210, Trial Tr., Page ID 1312. He asked the court to publish the transcripts for the jury to read themselves. The government responded that it would be calling two people from its office, a legal assistant and a victim/witness coordinator, to read the parts aloud without any "dramatic intonation" or "ad lib." *Id.* at 1313. The district court overruled Ayala-Vieyra's objection, noting that the government was permitted to decide how to effectively present its evidence and there was no "prejudice to the defendant evident based on what [the court] heard so far." *Id.* at 1313–14.

---

[1] *See United States v. Watkins*, No. 18-CR-32-A, 2021 WL 3732298, at \*7 (W.D.N.Y. Aug. 24, 2021); *United States v. Thompson*, No. 19-1610, 2021 WL 2402203, at \*5 (D.N.M. June 11, 2021); *United States v. Tagliaferro*, 531 F. Supp. 3d 844, 851 (S.D.N.Y. 2021); *United States v. Robertson*, No. 17-CR-02949, 2020 WL 6701874, at \*2 (D.N.M. Nov. 13, 2020); *United States v. James*, No. CR-19-08019-001, 2020 WL 6081501, at \*3 (D. Ariz. Oct. 15, 2020); *United States v. Trimarco*, No. 17-CR-583, 2020 WL 5211051, at \*5 (E.D.N.Y. Sept. 1, 2020); *United States v. Crittenden*, No. 4:20-CR-7, 2020 WL 4917733, at \*8 (M.D. Ga. Aug. 21, 2020).

"[T]here is nothing inherently problematic about reading" properly admitted transcripts. *Tragas*, 727 F.3d at 614. While a "staged performance or re-enactment" that "strayed from the direct evidence" would be problematic, Ayala-Vieyra points to no portion of the reading that was improper. *Id.* Rather, Ayala-Vieyra argues that the reading alone bolstered the evidence. But there is "no support for the proposition that admissible documentary evidence somehow becomes more credible if the prosecutor reads it aloud." *Id.* at 615. Therefore, the district court did not abuse its discretion in allowing government personnel to read the stipulated-to transcripts to the jury.

**3.**

Ayala-Vieyra contends that Burns provided improper expert testimony because it was irrelevant and unreliable. At trial, Burns testified that law enforcement often see code words used in phone calls and texts when suspects discuss drugs.

First, Ayala-Vieyra argues this testimony offers nothing beyond the knowledge of an average juror. We "regularly allow[] qualified law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate cautionary instructions are given, since knowledge of such activity is generally beyond the understanding of the average layman." *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004) (citation omitted). As knowledge of the drug trafficking trade is generally beyond the knowledge of the average juror, Ayala-Vieyra's argument is without merit. *See id.*; *United States v. Assfy*, No. 20-1630, 2021 WL 2935359, at *3 (6th Cir. July 13, 2021).

Second, Ayala-Vieyra argues that this type of testimony on drug trafficking practices is unreliable because it relies on anecdotes rather than methodology. "Rule 702 affords the district court 'considerable leeway in deciding in a particular case how to go about determining whether

particular expert testimony is reliable.'" *United States v. Simpson*, 845 F. App'x 403, 409 (6th Cir. 2021) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). A DEA agent's extensive experience is a permissible basis to find expert testimony reliable. *See id.* at 411; *United States v. Johnson*, 488 F.3d 690, 698 (6th Cir. 2007); *United States v. List*, 200 F. App'x 535, 545 (6th Cir. 2006). Therefore, the district court did not abuse its discretion in allowing Burns to testify as an expert on drug trafficking practices.

**C.**

Turning to sentencing, Ayala-Vieyra raises two procedural errors: (1) the application of a firearm enhancement and (2) the failure to credit him for acceptance of responsibility.

**1.**

A district court's finding that a defendant possessed a firearm for purposes of enhancement under U.S.S.G. §2D1.1 is reviewed for clear error. *United States v. Elder*, 90 F.3d 1110, 1133 (6th Cir. 1996). In applying the firearm enhancement under §2D1.1(b)(1), the government must show "'by a preponderance of the evidence that the defendant possessed the firearm' while committing a drug trafficking offense." *United States v. Davidson*, 409 F.3d 304, 312 (6th Cir. 2005) (citation omitted). "A defendant constructively possesses a firearm if he knowingly 'has ownership, or dominion or control over the firearm itself, or dominion over the premises where the firearm is located.'" *United States v. Brown*, 856 F. App'x 36, 40 (6th Cir. 2021) (quoting *United States v. Galvan*, 453 F.3d 738, 742 (6th Cir. 2006) (cleaned up)). We have consistently held that constructive possession can be shown where contraband is found in the defendant's living space. *See id.*; *United States v. Malone*, 308 F. App'x 949, 952–53 (6th Cir. 2009) (collecting cases).

The PSR recommended a two-level enhancement under U.S.S.G. §2D1.1(b)(1). Ayala-Vieyra objected, arguing the gun found in his residence belonged and was registered to his wife

and there was no evidence he stored drugs in proximity to the gun. The district court overruled his objection, finding that Ayala-Vieyra "stored a significant amount of drugs, which was the subject matter of this conspiracy, at his home, which he shared with his wife and, of course, a firearm can be jointly possessed by another individual." DE 213, Sentencing Tr., Page ID 1619–20.

While it is undisputed that the gun found in Ayala-Vieyra's home was registered to his wife, §2D1.1(b)(1) only requires possession, not ownership and "the law recognizes joint possession." *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008). As the gun was found in Ayala-Vieyra's living space, it was not clearly erroneous for the district court to determine that Ayala-Vieyra had constructive possession of the gun. *See id.*; *Brown*, 856 F. App'x at 40–41; *United States v. Akins*, 422 F. App'x 496, 497 (6th Cir. 2011).

Still Ayala-Vieyra argues that there was insufficient evidence that he kept and sold drugs at his home where the gun was found. Law enforcement did not find drugs in the search of Ayala-Vieyra's home, but there was trial testimony that a police dog detected the odor of drugs in the home, that Gaston Silva picked up a kilogram of cocaine at the home, and that officers observed individuals visit the home and then found cocaine in their possession. In light of the evidence that drug transactions did occur at the home, it was not clearly erroneous for the district court to find the firearm enhancement warranted. *See Wheaton*, 517 F.3d at 368; *Akins*, 422 F. App'x at 497.

**2.**

We review a district court's refusal to reduce a sentence based on acceptance of responsibility for clear error as the "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." *United States v. Theunick*, 651 F.3d 578, 588 (6th Cir. 2011) (quoting U.S.S.G. §3E1.1 cmt. n.5). "In rare situations a defendant may clearly demonstrate

an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." *Id.* (quoting U.S.S.G. §3E1.1 cmt. n.2). A defendant going to trial to preserve an issue that does not relate to factual guilt could be an example. *Id.*

Ayala-Vieyra objected to the absence of a reduction for acceptance of responsibility in his PSR. He argues he only proceeded to trial to challenge the drug quantity and had previously met with the government to express remorse for his conduct. The district court overruled Ayala-Vieyra's objection, explaining that Ayala-Vieyra went to trial and contested all elements of the offense before the jury. The court clarified: "This trial was not just about weight, in fact, weight was not an element of the offense before the jury." DE 213, Sentencing Tr., Page ID 1620.

At trial, Ayala-Vieyra argued to the jury that he was not guilty. He also moved for a judgment of acquittal, contending there was no evidence he conspired to sell or sold drugs. And contrary to Ayala-Vieyra's argument, drug weight was not an issue for the jury, but rather a matter for sentencing. Therefore, the district court did not err in declining to credit Ayala-Vieyra with acceptance of responsibility. *See Theunick*, 651 F.3d at 588; *United States v. Woods*, 323 F. App'x 437, 443 (6th Cir. 2009); *United States v. Hardy*, 302 F. App'x 420, 423 (6th Cir. 2008).

**III.**

The district court did not err in denying Ayala-Vieyra's motions to suppress wiretaps. Nor did the district court err in denying Ayala-Vieyra's request for transcripts of ex parte wiretap hearings where the government affirmed that no undisclosed evidence was presented at those hearings. As for trial, the district court did not err in allowing jurors to remain masked during voir dire, permitting phone transcripts to be read to the jury, or in allowing Burns to testify as an expert. At sentencing, the district court did not err in applying the firearm enhancement and denying credit for acceptance of responsibility. Therefore, we affirm the district court.