NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0204n.06

Case No. 23-5356

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
May 07, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| LYNNIE RAY PETTIGREW, | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: LARSEN, READLER, and DAVIS, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Through a wiretap, law enforcement discovered Lynnie Ray Pettigrew's role in a drug trafficking organization, leading to Pettigrew's indictment. Pettigrew sought to suppress evidence obtained from the wiretap, claiming that the government failed to demonstrate the wiretap's necessity. He also requested an evidentiary hearing to assess the accuracy of an affidavit supporting the wiretap application. After the district court rejected Pettigrew's arguments, he pleaded guilty to drug charges, preserving his ability to renew his suppression arguments on appeal. He does so now. Seeing no basis for reversal, we affirm.

I.

Federal officers began investigating a large drug trafficking organization in western Tennessee. Timmy Cole was identified as the group's leader. After months of investigation, officers concluded that a wiretap of Cole's cell phone was necessary to learn the full extent of

Cole's operation, pinpoint his suppliers, and identify other culpable members of the organization. Officers filed an application in district court to intercept electronic and wire communications from Cole's phone. They likewise asked the court to authorize the Federal Bureau of Investigation to obtain historical and real-time data regarding the location of Cole's cell phone. The district court granted the application. Later, it also authorized continued monitoring of Cole's phone along with additional wiretaps for other phones used by Cole and his associates.

Through wiretaps of Cole's phones, officers identified Lynnie Ray Pettigrew, Cole's half-brother, as a member of Cole's drug trafficking organization, leading to Pettigrew's indictment on drug conspiracy charges. His case was assigned to a different district court judge than the one who authorized the wiretaps. Pettigrew later moved to suppress recordings obtained from those wiretaps, asserting two arguments. One, the government failed to demonstrate that utilizing a wiretap was necessary to achieve the goals of the investigation, as federal law requires. Two, the affidavit supporting the wiretap application contained "inconsistencies," necessitating a "*Franks*" hearing to determine whether the affidavit's factual record was made falsely or with reckless disregard for the truth.

The district court denied the motion. Assuming, without deciding, that Pettigrew had standing to challenge the wiretap, the court concluded that officers sought a wiretap only after considering—and often using—numerous other investigative techniques, none of which could or did uncover the details of Cole's drug trafficking organization. The court also denied Pettigrew's request for a *Franks* hearing, concluding that he failed to make a substantial showing that the statements in the affidavit were false. Pettigrew later pleaded guilty to conspiring to possess with the intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and

2

846, preserving his right to appeal the denial of his motion to suppress. This timely appeal followed.

## II.

Pettigrew's appeal raises two issues. One is the propriety of the decision to authorize the government's wiretap. The other is the denial of Pettigrew's request for a *Franks* hearing. We take those issues in turn.

A. Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, regulates the government's use of wiretaps. Relevant here is Title III's "'necessity' requirement." *United States v. Mosley*, 53 F.4th 947, 953 (6th Cir. 2022). The provision mandates that wiretap applications contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c); *see Mosley*, 53 F.4th at 953. To satisfy § 2518(1)(c), officers must demonstrate that traditional investigative techniques alone were insufficient to expose the crime. *Mosley*, 53 F.4th at 953; *United States v. Gardner*, 32 F.4th 504, 515 (6th Cir. 2022). In a nutshell, officers must have given "serious consideration" to traditional investigative techniques, and, in turn, must explain why those techniques would be inadequate to expose the crime. *United States v. Alfano*, 838 F.2d 158, 163 (6th Cir. 1988) (quoting *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir. 1985)). This burden, however, has its limits. Chief among them, the government need not "prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." *Id.* (citation omitted). Nor must the government show that the attempted methods failed to produce any tangible results. Indeed, even if other techniques helped the investigation, the government may still pursue a wiretap if it cannot utilize those techniques to uncover enough information to dismantle the crime

3

network and prosecute its members. *See Gardner*, 32 F.4th at 515; *United States v. Castro*, 960 F.3d 857, 864 (6th Cir. 2020).

The district court concluded that the government satisfied the necessity requirement. Employing great deference, we will reverse that determination only to correct an abuse of discretion. *See Gardner*, 32 F.4th at 514 (citing *United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000)). Nothing of that sort occurred here. Consider the government's showings. In a 34-page affidavit submitted by an FBI Special Agent, the government explained why traditional investigative tools could not sufficiently uncover the full extent of Cole's drug trafficking organization. The affidavit analyzed ten different investigative techniques: confidential informants, physical surveillance, phone records, grand jury proceedings, undercover officers, search warrants, trash extraction, vehicle trackers, pole cameras, and financial investigation. Each time, the affidavit explained why the technique was unlikely to uncover the full scope of the drug operation. Officers had, in fact, deployed many of those tools over the eight months preceding the wiretap request. A confidential informant completed three controlled buys with Cole. Officers used pen register and trap and trace devices to identify call patterns between Cole and suspected associates. And officers surveilled Cole's residence, located in an area "r[u]n" by Cole's drug organization. Despite these efforts, officers still lacked details about critical components of the organization.

The affidavit likewise explained why nothing short of a wiretap could identify Cole's drug supplier and distribution network. New confidential informants, for example, would be unlikely to learn about the details of the drug operation because "[t]his type of information is guarded," and Cole would not reveal it to someone outside his inner circle. R.762-1, PageID 2800–01. Nor could physical surveillance equipment positioned outside Cole's home expose all components of the

criminal enterprise. Based on several controlled buys, officers suspected that Cole executed many drug transactions within his home, out of view. So too for in-person meetings between Cole and his suppliers, which officers anticipated would be conducted in secret. And attempts to surveil them risked tipping off Cole or his associates to the fact they were being watched. Against this backdrop, we cannot say that the district court abused its discretion in concluding that a wiretap was necessary to allow officers to fully investigate Cole's drug trafficking network.

Pettigrew disagrees. To his mind, the government should have utilized cell site location information (CSLI) before seeking a wiretap. By way of background, CSLI is a surveillance tool that allows officers to monitor the location of a suspect's cell phone. *Carpenter v. United States*, 585 U.S. 296, 300–02 (2018). According to Pettigrew, because officers requested CSLI data at the same time as the wiretap request, the government necessarily admitted that it had not considered this investigative technique before seeking a wiretap.

As powerful a tool as it may be, CSLI is, at bottom, a surveillance technique that simply provides where a cell phone is located at a given time. And as the affidavit explained, surveillance evidence alone was not enough to prosecute Cole's drug trafficking organization. Recall that many of Cole's suspected dealings occurred inside his home. CSLI would have confirmed Cole's location, but it would not have shown, for instance, whether visitors were fellow traffickers or merely social guests. Nor could CSLI reveal critical information about who supplied drugs to Cole or how those items were distributed. As the affidavit emphasized, physical surveillance had to be "used in connection with electronic and wire surveillance" to understand the substance of Cole's meetings. R. 762-1, PageID 2803. So while the affidavit indicated that CSLI would aid the investigation, it further explained that the goals of the investigation could not be accomplished without a wiretap. That is all Title III requires. *See Alfano*, 838 F.2d at 163.

5

B.  Pettigrew also sought a *Franks* hearing, which he believed was necessary to resolve alleged inconsistencies in the wiretap application.  In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court articulated when a defendant is entitled to a hearing to demonstrate that an affiant knowingly or recklessly made a false statement in support of a warrant application.  Although the process for obtaining a traditional search warrant is, in some respects, similar to the process for obtaining authorization for a wiretap, they are governed by different standards.  Nonetheless, our precedent has borrowed *Franks* to govern situations in which defendants challenge the veracity of statements made to demonstrate officers' compliance with Title III.  *See United States v. Poulsen*, 655 F.3d 492, 505 (6th Cir. 2011); *United States v. Stewart*, 306 F.3d 295, 304–05 (6th Cir. 2002); *see also United States v. Ippolito*, 774 F.2d 1482, 1484–85 (9th Cir. 1985) (discussing in detail why statements regarding Title III's necessity requirement are subject to *Franks*).  As binding authority, we must follow its lead.

For a hearing to come to pass in the *Franks* context, Pettigrew needed to make a "substantial preliminary showing" that officers "knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit."  *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013) (citing *Franks*, 438 U.S. at 171–72).  He likewise had to show that the authorizing court would not have found probable cause to authorize the wiretap without the falsity or omission.  *Id.*; *United States v. Young*, 847 F.3d 328, 349 (6th Cir. 2017).  The district court denied Pettigrew's request.  On appeal, we review the district court's legal conclusions de novo and factual findings for clear error.  *United States v. Bateman*, 945 F.3d 997, 1007 (6th Cir. 2019) (citations omitted).

Pettigrew's arguments fail in both respects.  Start with his failure to show that the affidavit contained a false statement or material omission.  In search of one, Pettigrew points to the

affidavit's claim that the "number of confidential sources available to law enforcement is limited." This assertion, he says, is belied by a search warrant application, filed months later, which disclosed five confidential sources. The affidavit and warrant application, however, are not inconsistent. Consider their timing. The affidavit explained that officers had obtained "a small number of confidential sources" who could aid in an investigation of Cole and others. R.762-1, PageID 2801. True, the warrant application later identified a handful of other confidential sources. Most of them, however, began working with the officers after federal officials applied for the wiretap. That the officers eventually obtained additional confidential sources after securing a wiretap does not indicate that the earlier affidavit knowingly or recklessly misled the authorizing court. And even then, any inconsistency between the two documents would hardly amount to a "substantial preliminary showing" that there was a potential *Franks* violation. *See United States v. Elkins*, 300 F.3d 638, 649 (6th Cir. 2002) ("Minor discrepancies in the affidavit may reflect mere inadvertence or negligence, rather than the reckless falsehood that is required for exclusion.").

Nor, in any event, has Pettigrew shown that any falsity or omission regarding the availability of confidential sources was critical to the issuing court's probable cause finding. As discussed, the affidavit emphasized the shortcomings of confidential sources in uncovering the details of Cole's drug trafficking organization. Case in point, Cole closely guarded the nature of his illicit activities. For that reason, a wiretap seemingly was needed to reveal the full scope of the criminal enterprise, even if other confidential informants could have been utilized.

Pettigrew also ties his request for a *Franks* hearing to government officials obtaining a wiretap of Cole's phone five years before seeking the more recent wiretap. Under Pettigrew's theory, the government's affidavit required extra scrutiny because the earlier wiretap never

7

resulted in Cole's arrest or conviction. But Pettigrew cites no authority for this bare assertion. Nor does he articulate why the prior wiretap authorization demonstrates that officers knowingly, intentionally, or recklessly made a false statement or material omission in their more recent application. Accordingly, the district court did not err in denying Pettigrew's request for a *Franks* hearing.

\*     \*     \*     \*     \*

We affirm the judgment of the district court.